## A98A1777. BLEDSOE v. THE STATE.
(513 SE2d 768)

RUFFIN, Judge.
A jury found Robert Douglas Bledsoe guilty of being an habitual violator, driving under the influence of alcohol, driving with an unlawful alcohol level, and obstruction of an officer. On appeal, Bledsoe contends that the trial court made numerous errors with regard to the State's cross-examination of him. For reasons discussed below, we affirm.

The record reflects that around midnight on January 29, 1996, Bledsoe and his co-defendant, Pamela Bledsoe,[1] were involved in an automobile accident in which their car struck a mailbox in a residential neighborhood. Bledsoe, testifying on his own behalf, admitted that he had been drinking that night, but claimed that Pamela was driving the car.

Tony Allen, a resident of the neighborhood, testified that he had just gone to bed on the night in question when he heard tires squealing. Allen jumped up, pulled open his shutters, and saw that a car had collided with a mailbox across the street from his home. Seconds after he heard the crash, Allen saw Bledsoe get out of the car from the driver's side, get back into the driver's seat, and try to move the car from off the mailbox. Bledsoe then exited the car from the driver's

[1] Any references to "Bledsoe" in the opinion refer to Robert Bledsoe.

side again, and Pamela exited from the passenger's side. Allen saw Bledsoe and Pamela remove beer cans from the car and put them in Allen's yard.

Another neighbor, Wesley Hardwick, also testified that he was awakened by a loud noise, immediately jumped out of his bed, and looked through his window to see Bledsoe getting out of the vehicle from the driver's side. Debbie Hardwick, his wife, testified that when she heard the crash, she looked from a window and saw Bledsoe getting out of the car from the driver's side. Although they did not see the actual collision, each of these witnesses stated that there would have been no time for the Bledsoes to have changed places in the car before they looked out their windows.

Corporal Grady Bagley of the Powder Springs Police Department arrived at the scene where he found Bledsoe and Pamela walking away from the car. Both smelled strongly of alcohol and had slurred speech. Pamela told Bagley that she had been driving when she lost control to avoid hitting a dog. While Bagley was administering a field sobriety test to Pamela, Allen asked him why he was testing her, since the male had been driving. After Bagley confronted Bledsoe, Bledsoe "got angry" and stated, "when I came around the damn corner, the dog crossed in front of me from the yard going towards the fence." Bagley arrested Bledsoe for driving under the influence of alcohol.

Bledsoe presented several witnesses who testified that he did not have a driver's license at the time of the incident and that they never saw him drive during the time his license had been revoked. Pamela Bledsoe testified that she would not allow Bledsoe to drive her car while he did not have his driver's license.

In several enumerations of error, Bledsoe contends that the trial court erred in allowing the State to cross-examine him with an irrelevant document which impermissibly placed his character in issue.[2] Several months after the offenses for which he was charged in this case, Bledsoe applied for a probationary driver's license under the habitual violator statute. The notarized application form, which was signed by Bledsoe, affirmed that "in the two years preceding date of this application, I have received no traffic citations of any type."

On cross-examination, the prosecutor asked Bledsoe whether Corporal Bagley had given him a citation on January 29, 1996, for DUI and habitual violator, to which Bledsoe responded, "Yes, sir." The State then attempted to introduce the probationary license

---

[2] For the first time on appeal, Bledsoe maintains that the trial court erred in admitting this document because the State did not lay a proper foundation for its use. Since he did not raise this issue below, it is not properly before us for appellate review. See *Thomas v. State*, 268 Ga. 135, 138 (8) (485 SE2d 783) (1997).

application to show that Bledsoe had made a false statement in the affidavit by claiming that he had not received any citations. After the prosecutor asked Bledsoe, "Since that time, have you told anyone that you had not received any citations within the past two years?[,]" Bledsoe's counsel asked for a bench conference, and the judge thereafter excused the jury for the day. The next day, Bledsoe's counsel, outside of the jury's presence, objected to the State's use of the affidavit, arguing that the affidavit was not false because Bledsoe had been charged by a warrant and not by a traffic citation. Counsel also argued that whether Bledsoe had made a false affidavit several months after the accident was irrelevant, and that the State's attempt to impeach him with it would introduce improper character testimony. The trial court allowed the State to cross-examine Bledsoe with regard to the affidavit and admitted the affidavit into evidence.

Thereafter, the State unsuccessfully tried to get Bledsoe to agree that information contained in his affidavit for a probationary license was false. When the State referred to the affidavit as a "false affidavit," Bledsoe's counsel objected to the form of the question, arguing that the affidavit was not false. The State asked Bledsoe, "Do you realize that by making that affidavit, you have committed another felony?"[3] Bledsoe responded that, "It's a true affidavit as far as I know."

In Georgia, the State may impeach a witness in the following ways: "(1) disproving facts testified to by the witness, (2) previous contradictory statements, (3) bias, interest or corruption on the part of the witness, (4) bad character evidence by reputation or conviction of crime, (5) incapacity or lack of knowledge or opportunity to observe, and (6) absence of religious belief." *Haynes v. State*, 180 Ga. App. 202, 203-204 (3) (349 SE2d 208) (1986). The State may not make "a collateral attack upon the [witness'] credibility, impeaching in nature." Id. at 203.

On appeal, the State contends that it offered the affidavit not for impeachment purposes, but to "disprove the inherent factual assertions made by appellant and his witnesses" — i.e., that Bledsoe was not driving on the night he was arrested. This contention is disingenuous, since the State indicated at least three times at trial that it was in fact using the affidavit to impeach Bledsoe's credibility. Moreover, the affidavit in no way shows that Bledsoe was driving on the night in question. At most, it shows that he may have lied several months after the accident as to whether he was charged with a "citation" that

---

[3] Bledsoe argues for the first time on appeal that the prosecutor's question improperly interjected the prosecutor's personal belief as to his guilt. However, Bledsoe has waived his right to appellate review of this issue because he failed to object on this ground at trial. See *Davis v. State*, 209 Ga. App. 187, 189 (3) (433 SE2d 366) (1993).

night. Since nothing in the affidavit implicated Bledsoe regarding the offenses with which he was charged, its only possible relevance was to show that he may have made a false statement about a collateral matter.

Nevertheless, even if the trial court erred in admitting the affidavit and allowing the State to cross-examine Bledsoe regarding it, our inquiry does not end here, for "harm as well as error must be shown to warrant a reversal." (Punctuation omitted.) *Hinton v. State*, 233 Ga. App. 213, 214 (1) (504 SE2d 49) (1998). In essence, the dispute over the affidavit constituted a dispute over the meaning of the word "citation" as contained in the preprinted application form. However, given (1) the testimony of several independent eyewitnesses that Bledsoe was seen getting out of the driver's side of the car within seconds of the collision and (2) Bledsoe's statement to Officer Bagley at the scene that, "when I came around the damn corner, the dog crossed in front of me," it is highly unlikely that the jury's conclusion that Bledsoe was the driver was materially impacted by the dispute over whether Bledsoe knowingly made a false statement in the affidavit several months after the incident. It is highly probable that the jury instead relied upon the independent eyewitness testimony and the evidence of Bledsoe's statement at the scene. Accordingly, any error in allowing the State to introduce the affidavit and question Bledsoe regarding it was harmless. See *Hinton*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 8, 1999.

*Robert S. Devins*, for appellant.
*Patrick H. Head, District Attorney, Debra H. Bernes, Michael S. Moody, Assistant District Attorneys*, for appellee.