A00A2230. ROGERS v. THE STATE.
A00A2231. MONTALVO v. THE STATE.
A00A2232. BETTENCOURT v. THE STATE.
(543 SE2d 81)

ELDRIDGE, Judge.

Jay Shannon Rogers, Stephen Allen Montalvo, and Paul Bettencourt were charged with the offenses of armed robbery (Count 1) and kidnapping (Count 2). Bettencourt was also charged with the offense of aggravated sodomy (Count 3). Following a jury trial, the jury found all three defendants guilty of armed robbery; Montalvo and Bettencourt guilty of kidnapping, Rogers not guilty of kidnapping; and Bettencourt guilty of aggravated sodomy. Defendants appeal from the denials of their respective motions for new trial. Because these appeals arise from the same trial, we consolidate them. We find no error and affirm.

The three defendants and the victim knew one another prior to the events which gave rise to this appeal. The victim considered Montalvo a friend, and the victim, Rogers, and Bettencourt had been roommates for a period of time. On March 28, 1999, at around 8:00 p.m., the victim was leaving work at McDonald's and walking toward the Genesis Gym in Rabun County. Bettencourt, who was driving a pickup truck, pulled in front of the victim and stopped. Montalvo was a passenger in the truck. Bettencourt exited the truck and talked with the victim in a friendly manner for one to two minutes, but sud-

---

[21] Id. at 386.

[22] See *Mallory v. State*, 271 Ga. 150, 151 (2) (517 SE2d 780) (1999).

denly pulled a shotgun from the truck and forced the victim inside. With the victim thus secured, Bettencourt and passenger Montalvo picked up Rogers at his home and proceeded to "Stonewall."

At Stonewall the victim was forced to give up his wallet at gunpoint. All three defendants held the gun at some point. Rogers and Bettencourt started to force the victim to commit oral sodomy on Rogers, but released him after the victim begged them to stop. Rogers hit the victim in the back of the head.

The victim was forced back in the truck at gunpoint, and they left Stonewall. They stopped for gas, and, while Rogers and Montalvo pumped and paid for the gas, Bettencourt held the victim in the truck at knifepoint. After leaving the gas station, Bettencourt dropped Rogers off at his house. Bettencourt stopped the truck down the road from Rogers' house, asked Montalvo to hand him some rope, and tied up the victim. When the victim asked Montalvo what was happening, Montalvo replied, "[T]his is between you and Bettencourt." After dropping Montalvo off at his house, Bettencourt drove up Screamer Road, stopped the truck, and attempted to force the victim to perform oral sodomy on him. When the victim resisted, Bettencourt put a plastic bag on the victim's head. After the victim tore a hole in the bag, Bettencourt forced the victim at knifepoint to perform oral sodomy on him and to allow him to perform oral sodomy on the victim. Bettencourt then drove the victim back into town, stopped near the post office, untied the victim, and let him out of the truck.

## Case No. A00A2230

1. Rogers claims that juror Barnett was not a resident of Rabun County and, therefore, was not qualified to be a competent juror. We disagree.

When the defendants' case was called for trial, the venire panel was sworn and all jurors were asked to state where they lived, where they worked, if they were married, and where their spouses worked. In response to these questions, juror Barnett stated that he lived on Betty's Creek Road, Rabun Gap; worked for the Department of Natural Resources; and traveled all over the state. No further inquiry was made during voir dire concerning Barnett's residence. Barnett was selected as a deliberating petit juror and was the foreperson of the jury. During voir dire, defendants' counsel could have questioned Barnett further about his residency, but elected not to do so. "A juror incompetent propter defectum is made specially competent by the act of the parties in allowing him to serve without challenge, and a verdict will not be set aside for such cause." (Citations and punctuation omitted.) *Vaughn v. State*, 173 Ga. App. 716, 718 (327 SE2d 747)

(1985); *Parris v. State*, 125 Ga. 777 (1) (54 SE 751) (1906).

Further, under the testimony given at the motion for new trial hearing,[1] we find no error in the trial court's finding that Barnett was domiciled in Rabun County at the time of the trial.

2. Rogers alleges that the State failed to prove beyond a reasonable doubt that the alleged crime occurred in Rabun County. We disagree. The victim testified that the events set forth in our statement of facts occurred in Rabun County. Such testimony is sufficient to prove venue. OCGA § 24-4-8 (testimony of a single witness sufficient to establish a fact).

3. Rogers contends that the trial court erred in failing to charge on the law of circumstantial evidence, even though the defense did not make a request for such charge. Rogers argues that such charge is mandated because the only direct evidence that he committed the offense of armed robbery came from the victim's testimony, which was impeached by witnesses for the defense who testified that the alleged victim had made prior inconsistent statements and that the victim's reputation in the community was one of dishonesty. We disagree. This issue was decided adversely to Rogers in *Carter v. State*, 240 Ga. App. 203 (523 SE2d 47) (1999).

When the State's case includes both direct and circumstantial evidence, a defendant is not relieved from the necessity of requesting a charge on circumstantial evidence. In the absence of a request to charge on circumstantial evidence, it is not error to fail to give it. *Yarn v. State*, 265 Ga. 787 (1) (462 SE2d 359) (1995).

> Whether [the victim's] testimony was impeached was a jury question, and even if the jury determined that he had been impeached, his credibility was a matter for that jury. *Chapman v. State*, 263 Ga. 393, 394-395 (3) (435 SE2d 202) (1993). As stated in *Chapman*, "the impeachment of a witness does not change the direct evidence given by that witness into circumstantial evidence." Id. at 395 (3).

*Carter v. State*, supra at 206.

---

[1] On motion for new trial, Barnett testified as follows: At the time of trial, he was employed by the Department of Natural Resources ("DNR") as the interpreter specialist for the state. His job required him to travel throughout the state, and he usually stayed in a different place each night. He did not own or rent a house or apartment anywhere within the state. When he went to the main office of DNR in Atlanta, he stayed with his aunt and helped pay part of her utilities. When he was not working, he spent most of his time in Rabun County. He was in Rabun County anywhere from one to three days each week and usually camped. The address he gave at trial was for the Hambidge Center where he has a permanent "association," and he considers it to be his local home. Barnett further testified that he considers Rabun County to be his home and is registered to vote, pays ad valorem tax on two vehicles, banks, buys insurance, and gets his personal mail in Rabun County. No additional witnesses were called.

Regardless of whether the victim's testimony was impeached, because there was direct evidence of Rogers' guilt, and there was no request made by the defense for a charge on circumstantial evidence, the trial court did not err in refusing to give a charge on this issue.

4. Rogers alleges that the trial court erred in failing to charge the jury, without request, on the lesser included offense of simple robbery.

"A charge on a lesser included offense is waived in the absence of a written request." *Pearson v. State*, 216 Ga. App. 333, 334 (454 SE2d 205) (1995). Rogers asserts that the charge should have been given even absent a request because simple robbery was his sole defense. Rogers argues that even though the victim testified that his money was taken at gunpoint, he denied possessing a weapon and admitted only that he used his hands to take the money in his statement to police.

"A trial court must charge the jury on a defendant's sole defense, even without a written request, if the circumstances support the charge. *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) [(1991)]." *Green v. State*, 240 Ga. App. 774, 779 (525 SE2d 154) (1999) (McMurray, P. J., dissenting). Assuming, without deciding, that a lesser included offense is a "sole defense" as used in *Tarvestad*, contrary to Rogers' assertion, there was no evidence to support a jury charge on simple robbery. The victim testified that while they were at "Stonewall" all three defendants at some point held the gun on him. Initially, Montalvo held the gun on him while Rogers and Bettencourt talked. Then Montalvo passed the gun to Rogers, and Montalvo and Bettencourt began to ask the victim how much his life was worth. Montalvo then gave the gun to Bettencourt who walked behind the victim and pointed the gun at his head and told him to get down on his knees. After the victim was allowed to stand back up, Rogers took the victim's money and, then, hit him on the head.

Officer Cary Thomas was called to the stand by the State and testified to the statements given by all three defendants. While Officer Thomas testified that Rogers denied holding the gun, he also testified that Rogers stated there was a shotgun there that night, which would make him a party to the crime of armed robbery. Rogers and his co-defendants did not testify. Therefore, neither the evidence presented by the State nor the evidence presented by the defense reasonably raised the issue that Rogers may have been guilty of simple robbery.

5. In four separate enumerations of error, Rogers asserts that the prosecutor made improper comments and arguments during closing argument. However, he did not object below, and therefore, he did not invoke a ruling by the trial court.

An objection to improper closing argument must be voiced when the alleged impropriety occurs at trial in order that the trial court may take remedial action, if necessary. *Todd v. State*, 261 Ga. 766 (2) (a) (410 SE2d 725) (1991). In the case at bar, appellant did not interpose an objection to the assistant district attorney's argument. Such failure to act has been held to constitute a waiver of the right to raise the issue on appeal (*Wyatt v. State*, 267 Ga. 860 (2) (a) (485 SE2d 470) (1997); *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996)); in other cases, the failure to object to improper closing argument has resulted in a review of the questioned argument to determine if there is a "reasonable probability" that, but for the improper argument, the result of the trial would have been different. See, e.g., *Todd*, supra; *Mize v. State*, 269 Ga. 646 (8) (501 SE2d 219) (1998); *Bright v. State*, 265 Ga. 265 (19) (455 SE2d 37) (1995). Recently, [the Supreme Court] resolved the seeming discrepancy in the standard of appellate review by holding that the "reasonable probability" test is applicable only to the review of a criminal case in which the death penalty was imposed. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

*Metts v. State*, 270 Ga. 481, 484-485 (511 SE2d 508) (1999). See also *Billups v. State*, 272 Ga. 15 (523 SE2d 873) (1999). Therefore, Rogers' failure to object at trial to allegedly improper argument precludes appellate consideration of the merits of his contentions.

6. Rogers asserts that the trial court erred by giving confusing, inconsistent, and conflicting jury instructions concerning what evidence could be considered against each of the defendants. Initially, the trial court charged the jury that they could "consider all the evidence as a whole, conviction of one defendant does not necessarily require conviction of another or all of them." Later in the charge, the trial court instructed the jury that

[a]ny statement made by one of the [d]efendants on trial in this case after the alleged criminal act has ended is admissible only against the person who made the statement, if the statement was freely and voluntarily made. Now if you find that a statement was made to the police freely and voluntarily by a [d]efendant on trial in this case, then you are to consider that statement only as against the particular [d]efendant who made it.

Rogers argues that these statements were in direct conflict and because no contemporaneous or additional instructions were given by

the trial court to clarify the misleading jury charges, the jury was sent to deliberate with confusing and irreconcilable instructions which led the jury to wrongfully convict Rogers based on the statements of his two co-defendants. We disagree.

The earlier instruction stated a general rule that all evidence could be considered. The later instruction clarified the general rule that any statements made by one of the defendants could be used only against the declarant.[2]

> It is well-established that the charge to the jury is to be taken as a whole and not out of context when making determinations as to the correctness of the same. Further, it is not necessary in considering a charge to assume a possible adverse construction, but a charge that is sufficiently clear to be understood by jurors of ordinary understanding is all that is required.

(Citations and punctuation omitted.) *Roberson v. State*, 236 Ga. App. 654, 655 (1) (512 SE2d 919) (1999). Considering the charge as a whole, we find no error.

7. Rogers alleges the trial court erred in granting the State's motion in limine to exclude evidence concerning a prior altercation between the defendants and the victim's parents, in which the victim's parents pulled guns on the defendants. At trial, Rogers, while conceding that the victim was not present, argued that: (1) the victim sent the defendants to his parents' home to retrieve some compact discs which the victim had taken when he moved out of the residence he had shared with two of the defendants; and (2) evidence of the encounter between the defendants and the victim's parents would show the victim's "motive in maybe bringing these charges here today." On motion for new trial and on appeal, Rogers argues that such actions on the part of the victim showed his willingness to put the defendants in harm's way to avoid his debts and to keep the compact discs he took when he moved out.

Assuming, without deciding, that the trial court erred in granting the State's motion in limine, the question that remains is whether the exclusion of this evidence was harmful error requiring a reversal of defendants' convictions and a new trial. "The Supreme Court of Georgia has adopted the highly probable test when determining if an error is harmless. If it is highly probable that the error did not contribute to the judgment then the error is harmless." (Cita-

---

[2] At trial, when Rogers' and his co-defendants' statements were introduced into evidence, they were introduced in such a manner so that they did not implicate anyone other than the declarant.

tions and punctuation omitted.) *Letlow v. State*, 222 Ga. App. 339, 343 (474 SE2d 211) (1996). "Where there is other evidence relating to the same issues the error addresses, especially where it is overwhelming, it is highly probable the error did not contribute to the judgment." (Citations and punctuation omitted.) *Nixon v. State*, 234 Ga. App. 797, 800 (507 SE2d 833) (1998).

In this case, the defendants were allowed a thorough and sifting cross-examination of the victim on the issues of whether he took compact discs belonging to Rogers and Bettencourt when he moved out, if he owed them rent money, and if he had made statements to others that he had the defendants locked up for something they did not do. Additionally, defendants were allowed to put into evidence the testimony of three witnesses who testified that the victim had stated in their presence that he made up the incident between him and defendants to get defendants in trouble because he owed them money and could not pay it. Consequently, it is highly probable that error, if any, in the trial court not allowing evidence of the altercation between the defendants and the victim's parents did not contribute to the judgment.

8. Rogers argues that the trial court erred in failing to charge the jury that the existence of a conspiracy must be proved before a jury can consider one co-defendant's statements against another co-defendant. See OCGA § 24-3-5.

Our review of the record reveals that Rogers did not request such a charge. Rogers nevertheless maintains this omission was reversible error. We do not agree.

> OCGA § 5-5-24 (b) places a duty on the defendant to request jury instructions. The defendant is relieved of this duty only in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence.

(Citations and punctuation omitted.) *Prine v. State,* 237 Ga. App. 679, 681 (515 SE2d 425) (1999). Rogers relies on the victim's testimony at trial as requiring a conspiracy charge. Pertinently, the victim testified that: (1) while he was being held at gunpoint, co-defendant Bettencourt asked if he wanted to live, if he cherished his life, if he wanted to keep on living, how much was his life worth, and for him to get on his knees; and (2) co-defendant Bettencourt told co-defendant Montalvo to give him a knife that was on the floorboard of Bettencourt's truck. However, this evidence was admissible as part of the res gestae of the crime.

Acts are pertinent as part of the res gestae if they are done pending the hostile enterprise, and if they bear upon it, are performed whilst it is in continuous progress to its catastrophe, and are of a nature to promote or obstruct, advance or retard it, or to evince essential motive or purpose in reference to it.

(Citations and punctuation omitted.) *Berry v. State*, 235 Ga. App. 35, 37 (508 SE2d 435) (1998). And "[t]he state is entitled to inform the jury of all the circumstances surrounding the commission of the crime or crimes charged." (Citation and punctuation omitted.) *Myrick v. State*, 242 Ga. App. 892, 894 (531 SE2d 766) (2000). Since the evidence was admissible as part of the res gestae of the crime, the evidence did not support a charge based on OCGA § 24-3-5.

9. Rogers contends that on three separate occasions the State improperly bolstered the credibility of the alleged victim. Initially, Rogers complains of the victim's affirmative response when the prosecutor asked the victim if the victim was telling the truth. Next, Rogers complains of the testimony of Officer Thomas on recross-examination by co-defendant Bettencourt's counsel where Thomas responded that the victim's emotional trauma could account for the victim's failure to state all the details of the incident in his initial statement to police. Finally, Rogers alleges as error defense witness Scott Newmire's response to the prosecutor's question, "How was he emotionally holding up at this point?" Newmire replied, "That would be hard to give a definitive answer. He was . . . he was upset as most victims would be on any sexual assault case."

Rogers did not object to any of this testimony at trial. While Rogers started to raise an objection to Thomas' response, he did not complete his objection. Rogers' counsel merely stated, "I object," and when the trial court inquired on what grounds, Rogers' co-counsel stated, "Let him finish judge. I'm interested in this." Rogers' counsel did not continue his objection. As a general rule, it is necessary to object at the time evidence is actually offered, or the objection is waived. Moreover, an objection different from that made below may not be claimed on appeal; appeal is limited to the ground advanced below. *Cherry v. State*, 230 Ga. App. 443, 446 (496 SE2d 764) (1998).

Rogers contends that even though he did not object to the testimony at trial, the admission of such constituted plain error and, thus, comes outside the general rule. We disagree. "Plain error is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Citation and punctuation omitted.) *Buice v. State*, 239 Ga. App. 52, 56 (520 SE2d 258) (1999); see also *Lynd v. State*, 262 Ga. 58 (414 SE2d 5) (1992); *United*

*States v. Fuentes-Coba,* 738 F2d 1191, 1196 (11th Cir. 1984). Error which is examined under the plain error standard is that "which is obvious and affects the appellant's substantial rights and 'where exceptional circumstances make it necessary to avoid a clear miscarriage of justice.' [Cit.]" Id. at 1197. The United States Supreme Court has held that in order to apply the plain error rule, there must be (1) error that has not been waived,[3] (2) error that is plain,[4] and (3) error which affects the substantial rights of the appellant.[5] Only if these three conditions are met *and* the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding may an appellate court exercise its discretion to notice a forfeited error. *United States v. Olano,* 507 U. S. 725, 732-736 (113 SC 1770, 123 LE2d 508) (1993).

Pretermitting that such testimony was error, such testimony does not meet the plain error standard for review. Under the evidence, such testimony, if in error, was not harmful and does not affect the substantial rights of Rogers. Rogers was convicted of armed robbery. He was not convicted of or charged with any crime involving sexual assault. In addition to the victim's testimony, Rogers in his own statement admitted that he was at Stonewall; that he knew there was a gun there; that he hit the victim; and that he took $20 from the victim. Further, Officer Newmire testified that at the hospital he observed a lump on the victim's head and ligature marks on the victim's wrists. Additionally, a shotgun, knife, and rope were found in co-defendant Bettencourt's truck. As this is not a case of plain error, Rogers waived the error by failing to object at trial.

## Case No. A00A2231

10. We reject Montalvo's contention that the admission of his two co-defendants' statements to the police violated his Sixth Amendment rights and constituted a violation of *Bruton v. United States,* 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (*"Bruton"*).

> *Bruton* held that the admission of a statement of a nontestifying co-defendant which inculpates the defendant unconstitutionally deprives that defendant of the Sixth

---

[3] Waiver is the " 'intentional relinquishment or abandonment of a known right,' " as opposed to a forfeiture which is "the failure to make the timely assertion of a right." (Citations omitted.) *United States v. Olano,* supra at 733.

[4] Plain error is that where the law is settled at the time of trial and clearly contrary to the law at the time of appeal. *Johnson v. United States,* 520 U. S. 461, 468 (117 SC 1544, 137 LE2d 718) (1997).

[5] "[I]n most cases ['affects substantial rights'] means that the error must have been prejudicial: It must have affected the outcome of the [trial] court proceedings. [Cits.]" *United States v. Olano,* supra at 734.

Amendment right to cross-examine witnesses, even where the jury is instructed to limit its consideration of the statement to the co-defendant who made it. While a non-testifying co-defendant's statement which is redacted so that it eliminates any reference to the existence of the defendant will withstand scrutiny under *Bruton* so long as it is accompanied by instructions limiting its use to the case against its maker, a non-testifying co-defendant's statement which is redacted by merely replacing the defendant's name with a blank or symbol violates *Bruton* regardless of whether limiting instructions are given.

(Footnotes omitted.) *Davis v. State*, 272 Ga. 327, 330-331 (528 SE2d 800) (2000). See also *Gray v. Maryland*, 523 U. S. 185 (118 SC 1151, 140 LE2d 294) (1998); *Richardson v. Marsh*, 481 U. S. 200 (107 SC 1702, 95 LE2d 176) (1987); *Hanifa v. State*, 269 Ga. 797 (505 SE2d 731) (1998).

In this case, while co-defendant Bettencourt's initial statement mentioned Montalvo by name, it denied any involvement of either of them in the crime. Bettencourt's denial could in no way be considered inculpatory of Montalvo. Bettencourt's subsequent oral statement, "If I was there and if we had sex it was consensual[,]" is not inculpatory of either co-defendant. The oral statement did not mention either of Bettencourt's co-defendants by name or refer to another person whom the jury could infer to be either of his co-defendants. Further, only Bettencourt was charged with any sexual crime.

Likewise, when Officer Thomas testified to the content of Rogers' statement, the questions and answers were formed in such a way as to indicate only the actions of Rogers and the victim. The names of the co-defendants were not used, nor did the statements refer to another person the jury could infer to be either co-defendant.

The fact that the jury might infer from the contents of the co-defendant's statement in conjunction with other evidence, that the defendant was involved does not make the admission of the co-defendant's statement a violation of the Confrontation Clause. *Richardson v. Marsh*, [supra at 211].

*Hanifa v. State*, supra at 803-804.

Montalvo further argues that the trial court failed to give a limiting instruction that the redacted statements should be considered only against the maker contemporaneously with the introduction of the statements. However, no request was made by defendants at trial for such a contemporaneous limiting instruction. The jury was given a proper limiting instruction during the trial court's final instruc-

tions to the jury before the jury began its deliberations. At such time, the trial court instructed the jury that the guilt or innocence of each defendant must be determined separately and that any statement made by one of the defendants was admissible only against the person who made the statement. Hence, there was no error. See *Stanford v. State*, 272 Ga. 267 (528 SE2d 246) (2000) (request for contemporaneous limiting instructions with prior act evidence waived by acquiescing to trial court's ruling denying such contemporaneous request); *Stone v. State*, 236 Ga. App. 365 (511 SE2d 915) (1999); *Johnson v. State*, 236 Ga. App. 252 (511 SE2d 603) (1999) (absent a request, a trial court has no obligation to give a contemporaneous limiting instruction on similar transaction evidence).

11. At trial, defense counsel sought to introduce evidence through cross-examination of the victim and through the testimony of a witness that the victim had stated he fantasized of having a sexual relationship with a man. Montalvo alleges that the trial judge abused his discretion in excluding evidence of the victim's homosexual fantasies because such evidence would impeach the victim's credibility and showed a "motive or scheme" for the victim making up the acts he claims the defendants committed against him. We disagree.

(a) Montalvo was not charged with a sexual offense. Thus, such claim of error cannot establish the requisite harm as to Montalvo. *Schneble v. Florida*, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1972).

(b) Any fantasy which the victim may have had was collateral to the issues being tried. The defense may not make "a collateral attack upon the witness' credibility, impeaching in nature." (Citation and punctuation omitted.) *Bledsoe v. State*, 236 Ga. App. 796, 798 (513 SE2d 768) (1999).

(c) Assuming arguendo that this alleged "fantasy" was an act of bad character, specific acts showing bad character are not admissible to impeach a witness' credibility. *Hollis v. State*, 225 Ga. App. 370, 371 (484 SE2d 54) (1997).

(d) Finally, any previous consensual homosexual fantasies the victim may have had would in no way support an inference that the accused could have reasonably believed that the victim consented to the conduct complained of in the prosecution which included armed robbery and kidnapping, as well as nonconsensual aggravated sodomy at knifepoint. See OCGA § 24-2-3; *Martin v. State*, 219 Ga. App. 277, 280 (3) (464 SE2d 872) (1995).

12. Montalvo alleges error that a juror was not a resident of Rabun County. This enumeration has been decided adversely to Montalvo in Division 1.

13. Montalvo alleges that the victim's testimony was improperly bolstered by the admission into evidence of Officer Newmire's entire

police report to the jury. However, this objection was never made at trial. Officer Newmire was called as a witness by the defense and was questioned about the statement the victim had given him. At the State's request and without initial objection by defense counsel, Officer Newmire began reading the entire report into the record. After Officer Newmire had read the portion of his report where he had recorded the victim's statement of the events which had transpired, defense counsel objected to Officer Newmire reading that portion of the statement which "talks about ultraviolet lighting — fluorescent white splotches on [the victim's] chin and throat" because counsel did not "believe the witness has the expertise — to testify what that was." "Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court." (Citations and punctuation omitted.) *Workman v. State*, 235 Ga. App. 800, 801 (510 SE2d 109) (1998).

14. Montalvo claims that the trial court erred in denying his new trial motion because trial counsel was ineffective due to counsel's failure to: (1) request a charge on robbery; (2) proffer evidence of the victim's alleged sexual fantasy; and (3) preserve any *Bruton* issues for appeal.

To prevail on a claim of ineffective assistance of trial counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The defendant must overcome the strong presumption that counsel's performance fell within the broad range of reasonable professional conduct and must show that there is a reasonable probability that, absent counsel's deficiency, the result of the trial would have been different. *Cross v. State*, 271 Ga. 427, 430 (3) (520 SE2d 457) (1999).

(a) Pursuant to our holding in Division 4, Montalvo was not entitled to a charge on robbery. Hence, counsel's failure to request such a charge was not ineffective assistance of counsel.

(b) Further, pursuant to our holding in Division 11, the alleged "fantasy" of the victim was not admissible. Therefore, trial counsel was not ineffective for his failure to make a proffer of such evidence.

(c) Lastly, Montalvo alleges that his trial counsel was ineffective in failing to preserve any *Bruton* issues. We have addressed the *Bruton* issues raised by Montalvo in Division 10. Hence, this enumeration provides nothing for us to review.

### Case No. A00A2232

15. Bettencourt alleges error in the admission of statements his

co-defendants made to police. This enumeration of error has been decided adversely to Bettencourt in Division 10. Neither of the statements made by Bettencourt's co-defendants was inculpatory of Bettencourt. Neither statement referred to Bettencourt by name or referred to another person whom the jury could infer to be Bettencourt.

16. Bettencourt alleges error in the trial court's refusal to allow the victim to be impeached with evidence of his sexual fantasies. This enumeration has been decided adversely to Bettencourt in Division 11.

17. Bettencourt alleges as error that the juror foreperson was not a resident of Rabun County. This enumeration of error has been decided adversely to Bettencourt in Division 1.

18. Bettencourt alleges he was denied effective assistance of counsel at trial.

(a) Bettencourt argues that his trial counsel was ineffective because counsel: (1) did not move to strike or request a mistrial when Officer Newmire testified that the victim "was upset as most victims would be on any sexual assault case"; and (2) failed to object to improper remarks made by the prosecutor during closing argument.

Bettencourt did not raise an ineffective assistance of counsel claim on these specific grounds at the trial level. Post-trial, Bettencourt obtained new counsel who filed a motion for new trial on general grounds on December 10, 1999. On February 10, 2000, counsel filed an amended motion for new trial which raised ineffective assistance of counsel, but which did not include these specific grounds. Further, at the hearing on the motion for new trial, these grounds were not argued or ruled on by the trial court.

> Our Supreme Court has stated that an ineffective assistance of trial counsel claim must be raised at the first practicable moment. *Bailey v. State*, 264 Ga. 300 (443 SE2d 836) (1991). The Court has further held that a claim of ineffective counsel must be raised before appeal if an opportunity to do so is available. *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996). If the opportunity to present such a claim was available, "the failure to seize that opportunity is a procedural bar to raising that issue at a later time."

*Wilcox v. State*, 236 Ga. App. 235, 239 (4) (511 SE2d 597) (1999). Here, Bettencourt had an opportunity to raise any ineffective assistance of counsel claims at the trial level and did so. However, his failure to include these specific grounds at trial precludes our review of them on appeal.

(b) Bettencourt further alleges his counsel was ineffective in fail-

ing to request a severance of his trial from his co-defendants. However, at the motion for new trial hearing, trial counsel testified that he did not file a motion for severance because as a matter of trial strategy he felt that if all three defendants were tried together, the State would have problems with the admission of the defendants' statements under *Bruton*. Trial strategy and tactics do not equate with ineffective assistance of counsel. *Phillips v. State*, 233 Ga. App. 557, 559 (504 SE2d 762) (1998).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 28, 2000 —
RECONSIDERATION DENIED DECEMBER 8, 2000 — ■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Brian Steel, L. Allyn Stockton, Jr.*, for appellant (case no. A00A2230).

*Kenneth D. Kondritzer*, for appellant (case no. A00A2231).

*Douglas L. Henry*, for appellant (case no. A00A2232).

*Michael H. Crawford, District Attorney, Robert D. Cullifer, Assistant District Attorney*, for appellee.