## A01A2197. CRAFT v. THE STATE.
(563 SE2d 472)

BLACKBURN, Chief Judge.

Jackie Craft was convicted by a jury of three counts of aggravated assault, three counts of possession of a firearm during the commission of a felony, and one count of possession of a firearm by a convicted felon. He appeals, arguing that the trial court committed multiple errors and that he received ineffective assistance of counsel. We affirm.

1. In one of his sixteen enumerations of error, Craft argues that the evidence presented by the State was insufficient to prove his guilt beyond a reasonable doubt.

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. An appellate court does not weigh the evidence or judge the credibility of witnesses, but only determines whether the adjudication of guilt is supported by sufficient competent evidence.

*Bohannon v. State.*[1]

Viewed in the light most favorable to support the verdict, the jury was authorized to find that on the afternoon of January 16, 1999, Terry Joe Parham, together with his father, William Parham, his son, Kehon Parham, his daughter, Kayla Parham, and his ex-wife, Lynn Parham, was raking leaves in his yard. On the other side of a vacant lot adjoining Parham's property, a group of men and women were talking.

At some point, the Parhams realized that certain members of the group were directing racial slurs at them. Three of the group, Jackie Craft, his sister, Judith Swafford, and James Myers, approached the Parhams, cursing and yelling at them. William Parham told them to go back, and Craft and his sister did turn back, but Myers, who had a stick in his hand, came to the edge of the Parham property, yelling that he was "going to beat some damned nigger heads." As Myers and William Parham yelled at each other, Terry Parham and his son ran to the basement in search of weapons. Terry grabbed an aluminum pipe and returned to his father's side. When Myers raised the stick, Terry struck Myers with the pipe. Myers fell to the ground, and Terry and his son Kehon jumped on Myers and began fighting with him. At this point, Swafford started firing a handgun into the air. William Parham pulled his son and grandson from Myers and yelled that they

---

[1] *Bohannon v. State*, 208 Ga. App. 576 (1) (431 SE2d 149) (1993).

needed to seek cover. As William tried to run to the other side of the house, he looked back and saw Craft lying across a parked car and firing in his direction with a rifle. Craft shot William in the leg with the rifle.

A short time later, the police arrived. One officer told Terry and Kehon, who were now armed, to drop their weapons and lie on the ground. Another officer saw Craft and Swafford firing their weapons into the air. When he told them to drop their weapons, the two ran. Following them around a house, he apprehended Swafford. Craft escaped, but the .22 rifle he had used was found under a nearby porch. We find ample evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Craft was guilty of the offenses with which he was charged. *Jackson v. Virginia*.[2]

2. Craft maintains that the trial court erred in failing to "either declare a mistrial, exclude the testimony of State witness Mixon, or, instruct the jury that violation of the order of sequestration of witnesses by the prosecutor in regard to State's witness Mixon should be considered in determining the weight and credit accorded to Mixon's testimony." We find no error.

At trial, one of the State's witnesses, Jimmy Levett, testified that he had seen Craft with a gun but had not seen Craft fire the gun. At a conference outside the presence of the jury, the prosecutor indicated that, earlier that morning, Levett had told him and Eddie Mixon, an investigator with the district attorney's office, that he had seen Craft firing the gun and that he would be calling Mixon as a witness for impeachment purposes. Because Mixon had been added to the State's witness list on the first day of trial, the trial court allowed Craft's attorney to speak with Mixon before he was called to the stand. The prosecutor accompanied Craft's attorney into the hall and asked Mixon to speak with the attorney, stating, "He's going to talk to you about a statement that Jimmy Levett made to you this morning. Jimmy has just denied the statement he made earlier." Upon returning to the courtroom, Craft's attorney argued that the prosecutor's statements to Mixon violated the rule of sequestration and asked that the judge declare a mistrial. The trial judge denied the request, finding that the rule had not been violated.

We agree with the trial judge that there was no violation of the rule of sequestration. "The purpose of the rule of sequestration is to ensure that the testimony of a witness who has yet to testify is not influenced by that of another witness." *Quijano v. State*.[3] We fail to

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Quijano v. State*, 271 Ga. 181, 183 (2) (516 SE2d 81) (1999).

see how the prosecutor's statement to Mixon concerning Levett's trial testimony had any influence on Mixon's testimony, given that the prosecutor advised both the judge and Craft what Mixon's testimony would be, and Mixon's testimony was, in fact, what the prosecutor said it would be.

Further, even were we to assume that the rule was violated, there would be no reversible error.

> When the rule of sequestration is violated, the violation goes to the credibility rather than the admissibility of the witness' testimony. A party's remedy for a violation of the rule is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness. Thus, [Craft's] first argument — that the trial court should have excluded the testimony of [Mixon] — is without merit. Moreover, [Craft's] second argument — that the trial court should have charged the jury that the violation should be considered in determining the weight and credit to give [Mixon's] testimony — is without merit, because [Craft] did not ask the trial court for that relief, but instead asked the trial court, incorrectly, to exclude [Mixon's] testimony or to grant a mistrial.

(Citations omitted.) *Johnson v. State.*[4]

3. Craft next argues that he was denied his right to a thorough and sifting cross-examination of State witness Terry Joe Parham. We disagree.

> While the right to a cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him (OCGA § 24-9-64), yet the scope of the cross-examination rests largely within the discretion of the trial judge, to control this right within reasonable bounds, and his discretion will not be controlled by a reviewing court unless it is abused.

*Payne v. State.*[5] The transcript shows that, after questioning Terry Parham at some length about his recollection of the events in this case and the order in which they occurred, Craft's attorney said, "All right. I'd like to go over with you one more time the time line." At this point, the State objected on the grounds that the questions had been

---

[4] *Johnson v. State*, 258 Ga. 856, 857-858 (4) (376 SE2d 356) (1989).
[5] *Payne v. State*, 258 Ga. 711, 712 (2) (373 SE2d 626) (1988).

asked and answered, and the trial court sustained the objection. We find that "[t]here was no abuse of discretion in refusing, on the cross-examination of a witness, 'to allow questions repeated that had been asked and fully answered.'" *McLeod Bros. & Co. v. Wilson Bros.*[6]

4. Craft next argues that the trial court improperly excluded, as inadmissible hearsay, testimony concerning a radio dispatch. That radio dispatch, heard by one of the officers who was called to the scene of the shooting, indicated that guns were being fired on both sides. Craft argues that he was not offering the dispatch to prove the fact that there was shooting on both sides but merely to show that the police were aware that this was a possibility and that the dispatch explained the officer's conduct; the dispatch was, therefore, not hearsay at all but instead original evidence. Again, we disagree.

First, it is clear that Craft, who attempted throughout the trial to show that the Parhams had fired on him, wished to introduce the evidence of the radio dispatch as proof of the fact asserted, i.e., that there was shooting on both sides. As the trial judge ruled, the dispatch was hearsay.

Further, it is clear that the dispatch does not come in as an exception to explain the officer's conduct.

> When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found, then information known to the actor is admissible to explain the actor's conduct. But where the conduct and motives of the actor are not matters concerning which the truth must be found, then the information, etc., on which he or she acted shall not be admissible under OCGA § 24-3-2. Only in rare instances will the conduct of an investigating officer need to be explained; as in practically every case, the motive, intent, or state of mind of such an officer will not be matters concerning which the truth must be found. At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something.

(Citations and punctuation omitted; emphasis in original.) *Thompson v. State.*[7]

Applying this principle to the case before us, it is clear that the conduct and motives of the officer in receiving the dispatch were not matters concerning which the truth must be found. Thus, the dis-

---

[6] *McLeod Bros. & Co. v. Wilson Bros.*, 108 Ga. 790 (2) (33 SE 851) (1899).
[7] *Thompson v. State*, 201 Ga. App. 646, 648 (3) (411 SE2d 886) (1991).

patch was not admissible as original evidence under OCGA § 24-3-2, and the trial judge did not err in excluding this testimony. *Thompson*, supra.

Craft also argues that even if the radio dispatch is hearsay, it was admissible to impeach the officer's statement that he had received no report of any shooting coming from the Parham residence. The radio dispatch Craft sought to introduce was the second of two dispatches received by the officer. When the officer was questioned on the stand by the State about the nature of the first dispatch he received about the shooting, Craft objected to the officer's testimony about the first dispatch on the grounds that the dispatch was hearsay. The trial court sustained the objection, and the State made no further inquiry into the content of the first dispatch, advising the officer not to testify to any hearsay. On cross-examination, the following exchange took place between Craft's attorney and the officer:

> [Attorney:] All right. Now, as I remember in your testimony, you said that you had never gotten a report of any shooting from the Parham residence to or towards the Baxter residence. Is that correct?
> [Officer:] In my investigation I had never — in questioning people no one told me during my investigation of any shots coming from Parham's residence towards the Baxter residence.
> [Attorney:] All right. Now qualifying it with during your investigation, okay. But earlier today you said you'd received no report.
> [Officer:] You wouldn't let me use hearsay from my radio dispatch.
> [Attorney:] All right. Well, I just want to clarify that. The — the truth, though, is on the way there you did receive a report that indicated shooting —.
> [State:] Your honor, I object —.
> [Attorney:] — going both directions.

We believe that the officer's explanation of the basis of his earlier statement obviated the need for impeachment through the introduction of the hearsay evidence. Further, exclusion of hearsay indicating that shooting was coming from both sides would only be harmful if Craft had pursued a justification defense; Craft did not argue that he had acted in self-defense but instead argued that he was not the person who shot William Parham. "We will not reverse a case for error unless the error is shown to be harmful." (Punctuation omitted.) *Downs v. State*.[8]

---

[8] *Downs v. State*, 240 Ga. App. 740, 744 (5) (524 SE2d 786) (1999).

5. In his fifth enumeration of error, Craft argues that the trial court erred in not admitting into evidence a police logbook, which contained a description of the suspect that was initially radioed to police officers; he contends that the logbook entry constituted *Brady* material and fell within the business records hearsay exception. In his sixth enumeration of error, Craft argues that the State, in failing to timely deliver the logbook to him, denied him his due process rights under the Fourteenth Amendment. We disagree with both arguments.

The police logbook contained the following description: "10-32 subject . . . eluding on foot, be a white male, overalls, beard, bleeding from the head with a rifle or shotgun." This description was initially broadcast to police officers by the dispatcher. At the time the trial started, the log was in the possession of the Bremen Police Department and the State attorney was not even aware of its existence until a copy of the log was served on him by Craft the day after the State had rested. Craft became aware of the existence of the log during trial when one of the Bremen police officers informed him that such logs were maintained. The trial judge advised Craft that

> if the logs were in fact *Brady*, they have now been furnished to you, and I will assure you that either or both officers will be made available to you to call. If you feel like that the statements in these logs are helpful to your client, you can call them and use them. You now have the information. I will be sure that both officers are available to you so that you can present their testimony if it supports these statements.

Besides making the officers available to Craft, the trial judge also allowed the dispatcher, who was called as a witness by Craft, to read the suspect description in the logbook to the jury. Given these facts, we do not find that Craft was denied his due process rights through the failure of the State to provide him with the police log. Further, even assuming that the trial court erred in refusing to allow the logbook into evidence, any error was harmless since the statement from the logbook was read to the jury. Where there is other evidence relating to the same issues the error addresses, it is highly probable the error did not contribute to the judgment and is, therefore, harmless. *Rogers v. State*.[9]

6. Craft asserts that the trial court erred in not giving the jury the pattern jury charge on guilt by association. We find no error. The record shows that the trial court gave the pattern charges on bare

---

[9] *Rogers v. State*, 247 Ga. App. 219, 224-225 (543 SE2d 81) (2000).

suspicion and mere presence at the scene of the crime. "As these charges cover substantially the same principles of law in the requested charge, there was no error." *Tumlin v. State.*[10]

7. Craft complains that the trial court erred in not giving his proposed jury charge no. 11. The transcript reveals that jury charge no. 11 concerns use of force in defense of self or others; however, in his brief, Craft's argument deals with the failure to charge the jury on a defendant's failure to testify. Whether Craft meant to argue the one or the other, neither has merit. As to the charge on self-defense, Craft did not attempt to prove at trial that he shot the gun in defense of self or others; instead, he took the stand and testified that he did not shoot the gun at all. Since there was no evidence to support a charge on defense of self or others, the trial court did not err in failing to charge on self-defense. *Adame v. State.*[11] As to the charge on failure to testify, the record shows that this request was withdrawn because Craft did, in fact, testify.

8. Craft next argues that the trial court was premature in reading the *Allen* charge to the jury. Again, we disagree.

After deliberating for over three hours, the jury sent the trial judge several notes asking for further explanation of reasonable doubt, aggravated assault, and what the State must prove in order to convict. The trial judge brought the jury back into the courtroom and recharged as to these elements. At that time, the trial judge also gave to the jury an *Allen* charge. The charge was substantially in the wording approved in *Spaulding v. State.*[12] There was nothing coercive about this charge. "It is within the trial court's discretion whether to give an *Allen* charge to a jury in disagreement. Furthermore, the decision to give an *Allen* charge does not require a finding that the jury is deadlocked." (Punctuation omitted.) *Moore v. State.*[13] We find no abuse of discretion by the trial court in electing to give the *Allen* charge to the jury. Id.

9. Craft maintains that the trial court erred in not recharging the jury with all jury instructions before the jury began deliberating in the second part of the bifurcated trial. There is no merit to this enumeration of error.

The trial court fully and completely charged the jury before it deliberated in the first part of the bifurcated trial. The next day, before the second part of the bifurcated deliberations, the trial court asked the jury to recall the charge already given and then gave the jury the additional charge relating to the offense of possession of a

---

[10] *Tumlin v. State*, 274 Ga. 309, 310 (3) (553 SE2d 592) (2001).
[11] *Adame v. State*, 244 Ga. App. 257, 262 (534 SE2d 817) (2000).
[12] *Spaulding v. State*, 232 Ga. 411, 414 (207 SE2d 43) (1974).
[13] *Moore v. State*, 215 Ga. App. 626, 628 (3) (451 SE2d 534) (1994).

firearm by a convicted felon. "We have found no reported case holding that when charges are given fully and completely just before the jury deliberates in the first stage of a bifurcated trial, it is reversible error to fail to repeat them in the second stage held shortly thereafter." *Smith v. State*.[14]

10. Craft next argues that the trial court erred in allowing the State to enter into evidence a certified copy of one of his convictions because the State did not prove that the plea was voluntarily given. We do not agree.

"[T]he burden in non-death penalty cases is on the recidivism defendant rather than the State to prove by a preponderance of the evidence that a previous guilty plea was not knowingly and voluntarily entered." *Nash v. State*.[15] If the defendant satisfies his burden of producing evidence of invalidity, the burden shifts back to the prosecution. Id. at 284.

In this case, the State established the fact of conviction by introducing a certified copy of a special presentment for which Craft entered a plea of guilty to three counts of violation of the Georgia Controlled Substances Act. Craft then testified that he had entered the guilty plea in return for the State's agreement to probate the sentence of his sister, a co-defendant in the case. He also stated that he had entered the plea on the advice of his attorney, who was also representing his sister.

Assuming, without deciding, that Craft has produced sufficient evidence of the invalidity of his plea, we find that the State met its burden of showing that the plea was in fact voluntary. Cross-examination of Craft showed that Craft: was educated, having completed five quarters in college; was advised of his rights to a trial by jury and his rights at trial; was advised of the rights he would waive if he entered a guilty plea; and responded in the affirmative when asked if his plea was freely and voluntarily made. After Craft's testimony, the trial court, cognizant of the *Nash* decision in weighing the evidence, made a finding that the plea had been freely and voluntarily given. We conclude that the trial court did not err in so finding. *Freeman v. State*.[16]

11. Craft contends that the trial court erred in not allowing him to present a closing argument on the last count of the indictment in the second phase of the bifurcated trial. We disagree.

In the first phase of the bifurcated trial, the jury found Craft guilty of three counts of aggravated assault and three counts of possession of a firearm during commission of a felony. During the second

---

[14] *Smith v. State*, 244 Ga. App. 512, 513 (1) (539 SE2d 504) (2000).
[15] *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999).
[16] *Freeman v. State*, 244 Ga. App. 393, 397 (535 SE2d 349) (2000).

part of the bifurcated trial, which concerned the one count of possession of a firearm by a convicted felon, the only evidence presented was the certified copy of Craft's prior conviction and testimony concerning the voluntariness of Craft's plea of guilty to that prior charge. The question of the voluntariness of Craft's guilty plea, as explained above, was not an issue for the jury's determination but was a matter for the trial court. The jury had already found that Craft was in possession of a firearm, and the certified copy of the conviction established the fact of prior conviction. There were, therefore, no issues for either the State or Craft to argue. While a defendant does have the right to be represented at every stage of the trial, we fail to see how Craft was harmed by being denied the opportunity to argue when there were no issues to be argued. As we stated in Division 4, "[w]e will not reverse a case for error unless the error is shown to be harmful." (Punctuation omitted.) *Downs*, supra at 744 (5).

12. Craft next argues that he should be granted a new trial based on newly discovered evidence. This argument has no merit.

> The standard for granting a new trial on the basis of newly discovered evidence is well established. "It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness."

*Timberlake v. State*.[17] "Motions for new trial on the ground of newly discovered evidence are not favored and are addressed to the sole discretion of the trial judge, which will not be controlled unless abused." (Punctuation omitted.) *LeGallienne v. State*.[18]

The new evidence to which Craft refers is an affidavit, signed by his sister, Swafford, on June 6, 2000, three months after the trial. In this affidavit, Swafford states: "I dropped the pistol on the ground and ran into my cousins apartment [sic] and grabbed a .22 rifle. I shot it toward the black guys. I thought the shots went into the ground. Jackie turned lose [sic] of James at this point. Jackie ran

---

[17] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).
[18] *LeGallienne v. State*, 180 Ga. App. 108, 111 (3) (348 SE2d 471) (1986).

over and took the .22 out of my hands and fired it into the air, trying to discharge the bullets."

This new evidence clearly fails to satisfy *Timberlake*. We begin by noting that, if, as the affidavit states, Craft observed Swafford's actions and then took the gun from her, he cannot satisfy *Timberlake*'s initial requirement that the evidence has come to his knowledge since the time of trial. He also fails to satisfy the second prong of *Timberlake*, that it was not owing to his want of diligence that he did not acquire the evidence earlier. Further, we have serious doubts that the evidence in Swafford's affidavit is so material that it would have produced a different verdict. As the lower court judge observed in his order denying Craft's motion for a new trial, the statements in Swafford's affidavit hardly amount to a confession to the shooting for which Craft was convicted, and the jury found Craft guilty even though the defense presented numerous witnesses in an attempt to contradict the testimony that Craft was the shooter. "Unless it is reasonably apparent from the record that the alleged newly discovered evidence will likely produce a different verdict upon another trial, a motion for new trial based upon that ground should not be granted." (Punctuation omitted.) *LeGallienne*, supra at 111 (3). Finally, since Swafford's statement that she fired the rifle directly contradicts testimony of witnesses for the State, her affidavit only serves to impeach the credibility of those witnesses. Since the failure to show one requirement of *Timberlake* is sufficient to deny a motion for a new trial, *Timberlake*, supra at 491, it is abundantly clear that Craft is not entitled to a new trial.

13. Craft asserts, for numerous reasons, that the assistance of his counsel was ineffective. We disagree.

The burden is on Craft to establish that he received ineffective assistance of counsel. *Pittman v. State*.[19]

> To establish a claim of ineffective assistance of trial counsel, the defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense. In determining prejudice, the question is whether, without the errors of counsel, there is a reasonable probability that the jury would have had a reasonable doubt of guilt.

(Footnote omitted.) *Mitchum v. State*.[20] "As always, there is a strong presumption that trial counsel's assistance was adequate and that

---

[19] *Pittman v. State*, 274 Ga. 260, 264 (553 SE2d 616) (2001).
[20] *Mitchum v. State*, 274 Ga. 75, 76 (2) (548 SE2d 286) (2001).

counsel's decisions were made within the bounds of reasonable professional judgment." *Washington v. State*.[21]

> A charge of ineffective assistance of counsel is not judged by a standard of errorless counsel or by hindsight, but rather whether counsel rendered reasonably effective assistance; there is a critical distinction between inadequate preparation and unwise choices of trial tactics and strategy, which are not to be judged by hindsight or result.

*Castleberry v. State*.[22]

After a hearing on Craft's motion for new trial, the trial court found that Craft's claim of ineffective assistance of counsel was without merit. Indeed, the trial court concluded that "Defendant's trial counsel presented a vigorous defense consisting of twelve witnesses and thorough and sifting cross-examination of all of the State's witnesses over a period of four days."

The trial court's findings will be upheld unless they are clearly erroneous. *Johnson v. State*.[23] After an examination of the record, we find that Craft's trial counsel conducted a vigorous defense and most of Craft's objections to counsel's assistance fall into the category of trial strategy and do not amount to ineffective assistance of counsel.

Craft complains that his trial counsel failed to call certain witnesses, failed to question certain witnesses on various issues, and failed to impeach certain of the State's witnesses. He also complains that counsel failed to make certain objections or motions. Decisions on which witnesses to call, whether and how to conduct cross-examinations, and what trial motions to make and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client. *Reid v. State*.[24] Craft has not overcome the strong presumption that his counsel's performance was not deficient and that his actions might be considered sound trial strategy. *Carl v. State*.[25]

Craft argues that counsel's assistance was ineffective because he did not bring forward a claim of self-defense. At the hearing on the motion for new trial, Craft's trial counsel testified the theory of the defense was that Craft did not shoot the rifle. Craft took the stand and denied that he had used the gun. "Counsel's decision as to which theory of defense to pursue is a matter of strategy and tactics; and, as

---

[21] *Washington v. State*, 274 Ga. 428, 430 (2) (554 SE2d 173) (2001).
[22] *Castleberry v. State*, 274 Ga. 290, 294 (4) (553 SE2d 606) (2001).
[23] *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996).
[24] *Reid v. State*, 235 Ga. 378, 379 (219 SE2d 740) (1975).
[25] *Carl v. State*, 234 Ga. App. 61, 64 (506 SE2d 207) (1998).

a general rule, matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Milliken v. State*.[26] See also *Sutton v. State*.[27]

Trial counsel's failure to request a jury charge on a lesser included offense is also advanced by Craft as a basis for his claim of ineffective assistance. This claim is without merit since the evidence did not support a charge on a lesser included offense. *Peterson v. State*.[28]

> There is no evidence that [Craft] merely pointed a weapon at the victim or was otherwise committing either a misdemeanor or a lawful act in an unlawful manner. . . . The only evidence that [Craft] did not commit aggravated assault was his [testimony], in which he admitted his presence [at the scene], but denied that he shot the victim or that he even had a gun. This statement did not show that [Craft] committed any crime at all with regard to the discharge of the gun. Thus, the State's evidence supported a finding that [Craft] was guilty of [aggravated assault], whereas his denial would have authorized the jury to find him not guilty of any criminal offense. Where, as here, the evidence establishes either the commission of the completed offense as charged, or the commission of no offense, the trial court is not authorized to charge the jury on a lesser included offense.

(Citations omitted.) *Cotton v. State*.[29]

Craft asserts that counsel's representation was inadequate because he did not sufficiently consult with Craft. However, Craft "does not describe for us how additional pre-trial communications would have changed the outcome of his trial. Therefore, he has failed to establish that this alleged instance of ineffectiveness prejudiced his defense." *Washington*, supra at 430 (2).

We have examined the remaining grounds which Craft sets forth in support of his claim that his counsel's assistance was ineffective and find them to be without merit. Pretermitting whether trial counsel's performance was deficient for any of the reasons advanced, the issue is "whether if such deficiency had not occurred, a reasonable probability exists that a different verdict would have been reached." *Carl*, supra at 63-64. We conclude that it would not.

---

[26] *Milliken v. State*, 230 Ga. App. 810, 812 (2) (b) (498 SE2d 127) (1998).
[27] *Sutton v. State*, 210 Ga. App. 247, 248 (435 SE2d 748) (1993).
[28] *Peterson v. State*, 212 Ga. App. 147, 152 (441 SE2d 481) (1994).
[29] *Cotton v. State*, 274 Ga. 26, 27 (2) (549 SE2d 71) (2001).

14. In his next enumeration of error, Craft claims that his conviction should be overturned because of improper contact between the jury and outsiders. This enumeration of error is without merit.

"The trial court's decision on a motion for new trial will be upheld on appeal unless it [is] an abuse of discretion." *Lisle v. Willis*.[30] At the hearing on the motion for new trial, Craft alleged improper jury contact by Mixon, an investigator with the district attorney's office, and by Joey Rutherford, the bailiff in charge of Craft's jury. Craft and his sister, Swafford, testified that they saw both Mixon and Rutherford laughing and shaking hands with jurors, although they did not hear any words exchanged. In the order denying Craft's motion for a new trial, the judge concluded that there had been no improper communication with the jury, writing:

> Both Mixon and Rutherford were called as witnesses for the State and both denied having any conversations with jurors about the facts of defendant's case. It should be noted that Rutherford was a sworn bailiff who was charged with supervision of defendant's jury which required some minimal contact with jurors during recesses. It should also be pointed out that upon calling Eddie Mixon to the stand, defendant admitted he was mistaken about Mixon. This contention is without merit.

The trial court did not abuse its discretion in finding that there had been no improper communication with the jury and denying Craft's motion for a new trial on this ground.

15. In his final enumeration of error, Craft argues that his conviction should be overturned because the trial judge engaged in improper communications with the assistant district attorney. This enumeration of error has no merit.

Craft claims in his brief that the trial judge "consulted with the District Attorney's office" and that "[t]his communication substantially altered the outcome of the hearing by bolstering the State's case." An examination of the transcript of the hearing reveals that the judge wanted to hear from two witnesses whose testimony would be relevant to issues raised at the hearing on the motion for new trial and that he instructed the district attorney's office to call these witnesses so that they could testify. When he told Craft and the attorney representing him at the hearing that he had instructed the district attorney's office to call the witnesses, they thanked the judge. Craft made no objection to the testimony of the witnesses at the hearing

---

[30] *Lisle v. Willis*, 265 Ga. 861, 864 (3) (463 SE2d 108) (1995).

and, in fact, cross-examined one of them, Craft's trial counsel, at length.

"In this state, it is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which might have been raised." (Punctuation omitted.) *Curtis v. State*.[31] Thus, nothing has been preserved for our review.

Even if the objection had been preserved for review, we do not approve of Craft's characterization of the trial judge's action. The extent of the trial judge's communication with the district attorney's office was to leave instructions that certain witnesses be asked to attend the hearing. In simply instructing the district attorney's office to call the witnesses to the hearing, the trial judge hardly "consulted with the District Attorney's office" in a manner that "substantially altered the outcome of the hearing by bolstering the State's case."

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 27, 2002 —

*James J. Anagnostakis*, for appellant.
*James R. Osborne, District Attorney, Laura L. Herrin, Assistant District Attorney*, for appellee.

---

[31] *Curtis v. State*, 212 Ga. App. 237, 239 (4) (441 SE2d 776) (1994).