The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Robert A. WIEGHARD, Defendant-Appellant.

No. 83CA0945.

Colorado Court of Appeals, Div. III.

April 24, 1986.

Rehearing Denied May 22, 1986.

Certiorari Denied (Wieghard) Oct. 14, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Public Defender, Claire Levy, Deputy Public Defender, Jane S. Hazen, Sp. Deputy Public Defender, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, Robert Wieghard, appeals the judgment of conviction based on a jury verdict of guilty of first degree murder and aggravated robbery. We affirm.

Shortly after midnight on June 23, 1982, Christine Sagolla, a waitress at Bennigan's

restaurant in Boulder, was preparing to check out her receipts for the evening prior to finishing her shift. She entered the ladies' restroom and was followed there by a man who attempted to take her money and receipts. A struggle ensued, and the man pulled a handgun, rifled her purse, and forced her cooperation in revealing that more money was kept in the restaurant office and in gaining entry thereto.

In the office, headwaiter Henry Callahan and waitress Kathy Kiedinger were counting Kiedinger's receipts for the night. At the gunman's order, Sagolla appeared at the office window and knocked, whereupon Callahan opened the door, and the gunman pushed Sagolla in. The gunman demanded money, and Callahan gave him the money in the cash register. The gunman demanded more, and, when Callahan replied there was no more, the gunman shot him in the head at close range and left. Callahan died a short time later from the bullet wound.

On July 26 an anonymous caller informed the Boulder police department that Wieghard was responsible for the robbery and homicide at Bennigan's. On August 3, a line-up was conducted and Sagolla identified Wieghard as the gunman. The jury convicted Wieghard of first degree murder and aggravated robbery.

## I.

On appeal, Wieghard first contends the trial court erred in admitting the testimony of Ron White, an inmate at the Boulder County jail. White testified at trial that, during the fall of 1982, he gained Wieghard's confidence while they were both housed at the Boulder County jail, and that Wieghard had described the crime to White, discussed the line-up procedure where Wieghard realized Sagolla had identified him, and asked White to kill Sagolla for him for $3,500 plus expenses in order to destroy the prosecution's case against him. Wieghard claims White's status was equivalent to that of a police informant and argues that, therefore, his Sixth Amendment guarantee of effective assistance of counsel during critical stages of the criminal proceedings was violated. We disagree.

Wieghard bases his argument on the rulings in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), which further refined the *Massiah* holding that, under certain circumstances, a defendant's own incriminating statements obtained by a secret government agent may not be used against him at trial. The Supreme Court in *Henry* noted three factors as important in determining whether the government deliberately elicited incriminating statements within the meaning of *Massiah:* 1) that the informant was acting as a paid informant for the government; 2) that the informant was ostensibly no more than a fellow inmate of the defendant; and 3) that the defendant was in custody and under indictment. The second and third factors were met in the present case. The only question that remains is whether White was acting under instructions as a paid informant. We conclude he was not.

It was undisputed that, during an earlier period, White had been a paid informant for the Denver police, but that relationship ended in May 1982. Also, he had given information to Boulder County jail officials, but that pertained to another case. White had no relationship with the Boulder police department or with the Boulder district attorney's office until he met with a police detective on November 1, 1982. Based on that showing, the trial court barred any information obtained by White after that meeting but allowed him to testify as to statements made by defendant to White prior thereto.

White testified he decided on his own to try to gather information from Wieghard. Under these circumstances, no evidence was presented that police "deliberately elicited" information from defendant prior to November 1. Therefore, Wieghard's Sixth Amendment guarantee was not violated, and the trial court did not err in admitting the testimony of White.

## II.

Wieghard next contends the trial court abused its discretion in allowing expanded media coverage of the trial. We do not agree.

In 1983, our supreme court enacted Colorado Code of Judicial Conduct Temporary Canon 3(A)(8), which outlined guidelines for expanded media coverage of court proceedings. Prior to trial, the local newspaper and television station requested expanded media coverage under this rule. At a pretrial hearing, the trial court held that the presumption was in favor of open coverage and that a party opposing such coverage would have the burden of proving adverse effects therefrom. Defense counsel stated he could not spend his time developing an evidentiary record on the matter. The court then granted the request and outlined the parameters within which it expected the media to operate.

We find no abuse of discretion by the trial court here. A hearing was conducted. Counsel were given an opportunity to present evidence. The mere presence of a camera in the courtroom does not in itself deny a defendant due process. *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981).

## III.

Wieghard also contends the trial court abused its discretion when it allowed two prosecution witnesses to testify despite the fact that, before they testified, they had viewed news coverage of the trial in violation of the court's sequestration order. We disagree.

Matters relating to violations of sequestration orders are handled in the trial court's discretion. Absent an abuse of that discretion, the decision not to impose sanctions will be upheld. *People v. Gomez*, 632 P.2d 586 (Colo.1981). Here, the trial court found there was no bad faith shown as the district attorney's office had attempted to carry out the court's order. It also found that Wieghard suffered no prejudice because of what the witnesses had viewed. There was no abuse of discretion here.

## IV.

Weighard further contends the trial court erred in admitting a job application that he had submitted to Bennigan's because the prosecution failed to provide discovery of the document. Again, we disagree.

At a hearing on the admission of the job application, the parties disagreed over whether a copy of Wieghard's job application had been delivered to the defense attorneys. The trial court held that the People had complied with its discovery orders, that Wieghard's lack of access to the document prior to trial was not prejudicial, and that the defense had been put on notice by other exhibits that Wieghard had done something at Bennigan's on May 16 which they should have looked into. Wieghard did not ask for a continuance, and made no showing of prejudice. Indeed, the failure to move for a continuance discredits any claim of prejudice. *See People v. Graham*, 678 P.2d 1043 (Colo.App.1983).

## V.

Wieghard lastly contends the trial court erred in denying his motion for a mistrial based on the prosecution's comments during closing argument. He argues the prosecution unconstitutionally referred to his failure to testify. We disagree.

On appeal, Wieghard objects to the prosecutor's statement on rebuttal in closing argument: "[T]he gunman recognized Henry Callahan, the one identification we haven't heard about throughout the whole trial." Wieghard's counsel did not make a contemporaneous objection, so we must evaluate this allegation of error under the plain error standard. *See People v. Constant*, 645 P.2d 843 (Colo.1982). The test is whether the comment in context was calculated or intended to direct the attention of the jury to defendant's neglect or failure to testify in his own behalf. *People v. Todd*, 189 Colo. 117, 538 P.2d 433 (1975).

We agree with the trial court that this was not a reference to Wieghard's failure to take the stand.

Judgment affirmed.

KELLY and METZGER, JJ., concur.