The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Leotis Durwin **GREER**, Defendant–Appellant.

No. 08CA0329.

Colorado Court of Appeals, Div. V.

March 3, 2011.

As Modified on Denial of Rehearing April 21, 2011.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Pearson & Paris, P.C., Sean P. Paris, Michelle L. Searcy, Lakewood, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Leotis Durwin Greer, appeals the judgment of conviction entered on jury verdicts finding him guilty of one count of sexual assault on a child, one count of sexual assault as part of a pattern of sexual abuse, and five counts of unlawful sexual contact that the district court merged into one count. We reverse the judgment as to the merged counts of unlawful sexual contact, affirm in all other respects, and remand for further proceedings.

## I. Background

Defendant was a manager at a fast-food restaurant where two teenage girls, S.D. and S.S., were employed. S.S. and S.D. testified to the following facts at defendant's trial.

On one shift, S.D., then fourteen, became uncomfortably warm while she was working the restaurant drive-thru window. Defendant told her that she could turn a fan on and although she told him she did not need help to reach the switch, defendant grabbed S.D.'s waist and lifted her to assist her reach. Defendant then left the drive-thru area. When he returned, he touched S.D.'s buttocks with his hand but told her it was an accident. Defendant again left the drive-thru area. He returned and touched S.D.'s buttocks with his hand several times, leaving between each touching for five to ten minutes. Finally, defendant returned to the drive-thru and while both were fully clothed stood behind S.D. and rubbed his penis on her buttocks.

S.S. began working at the restaurant when she was fifteen years old. While S.S. was working at the drive-thru window, defendant stood behind her and rubbed his penis against the center of her buttocks while both were fully clothed. Defendant repeated this act approximately twenty to thirty times while S.S. worked at the restaurant, always at the drive-thru window. Additionally, when S.S. was sixteen years old, defendant told her to go to the walk-in freezer to get some french fries. Defendant followed S.S. into the freezer and grabbed her hand and held it against his penis for about forty-five

seconds. S.S. pulled her hand away and immediately left the freezer.

With respect to S.D., the People charged defendant with one count of sexual assault on a child (count 1) in violation of section 18–3–405(1), C.R.S.2010, and one count of sexual assault on a child-pattern (count 2) in violation of section 18–3–405(1) and (2)(d), C.R.S. 2010. Concerning S.S., the People charged defendant with one count of unlawful sexual contact with force (count 3) in violation of sections 18–3–402(4), 18–3–404(1)(a) and (2), C.R.S.2010, and five counts of unlawful sexual contact (counts 4–8) in violation of section 18–3–404(1)(a).

The jury convicted defendant on all counts except count 3. Defendant appealed.

## II. Double Jeopardy

We first reject defendant's argument that his convictions for counts 1 and 2 should be merged because he was charged with multiple offenses within the same unit of prosecution in violation of his rights against double jeopardy under both the United States and Colorado Constitutions.

■ We disagree with defendant that he preserved his double jeopardy argument by stating in his motion for judgment of acquittal regarding his acts toward S.D. that "in order to have a pattern, there has to be different and distinct acts." This statement was not sufficient to alert the trial court as to the issue of double jeopardy. Accordingly, we review for plain error. *People v. Tillery*, 231 P.3d 36, 47 (Colo.App.2009) (*cert. granted* May 24, 2010) (reviewing defendant's unpreserved claim of double jeopardy error and supplemental assertions for plain error under Crim. P. 52(b)). We recognize as plain error those obvious and substantial errors that "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment." *People v. Miller*, 113 P.3d 743, 749–50 (Colo.2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)).

The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused from being tried or punished multiple times for the same offense. U.S.

Const. amend. V; Colo. Const. art. II, § 18; *Woellhaf v. People*, 105 P.3d 209, 214–15 (Colo.2005) (citing *Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)).

■ Double jeopardy is commonly implicated when a statute establishes multiple ways of committing the same offense and a defendant is charged with multiple offenses because the offense was committed using more than one of the alternative methods. *Woellhaf*, 105 P.3d at 215. In these situations, a defendant may be prosecuted for distinct offenses under the same criminal statute where (1) the unit of prosecution prescribed by the General Assembly permits the charging of multiple offenses, and (2) the evidence supporting each offense justifies the charging of distinct offenses. *Id.*

■ "Any sexual contact" constitutes the unit of prosecution for sexual assault on a child. *Id.* at 216. The prosecution may seek multiple convictions under the statute "if the evidence adduced in support of each count justifies the charging of distinct offenses." *Quintano v. People*, 105 P.3d 585, 591 (Colo. 2005).

■ Sexual assault incidents may be factually distinct if, among other things, separate criminal acts occurred at different times, were separated by intervening events, resulted from separate volitional events based on a "fresh impulse," were temporally distinct, involved moving or repositioning the victim, involved penetration of different orifices, or involved more than one victim. *Id.*

■ Here, the prosecution had sufficient evidence to charge defendant with two counts arising from two separate sexual assault crimes on S.D. S.D. testified that defendant had touched her buttocks with his hand, then left the drive-thru for approximately five or ten minutes (or at another point she testified to as much as fifteen minutes), and returned several times to touch her buttocks with his hand again. S.D. testified that defendant again left the drive-thru and only then came back and rubbed his penis against her buttocks. Thus, the evidence demonstrated that the touchings resulted from separate volition-

al events. *See id.* at 592 (the relocation of the victim to various areas of the house, statements by the defendant indicating renewed intentions, the presence of a sufficient break in acts, and other circumstances offered the defendant an opportunity to reflect before embarking on a new course of conduct). Accordingly, the prosecution's separate charges were not improper based upon the evidence, and defendant was not placed in jeopardy of being charged and convicted twice for the same offense. We therefore discern no error, plain or otherwise.

### III. Unanimity

Defendant complains of three unanimity problems. First, he contends that the trial court erred in not requiring the People to more specifically elect the act providing the basis for count 1 involving S.D. Second, he contends that the trial court erred in not requiring the People to elect a specific act for the pattern of abuse sentencing enhancer in count 2 or in not providing a modified unanimity instruction. Third, he complains that the trial court's solution of merging counts 4–8 into one count did not resolve the unanimity problem after the jurors convicted on each count but indicated by special interrogatory on the verdict forms that they were not unanimous as to the specific act which constituted the merged offense. We reject defendant's first two contentions but agree with the third.

■ An accused has the right to a jury trial and a unanimous jury verdict. U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25; § 16–10–108, C.R.S.2010 ("The verdict of the jury shall be unanimous."); *Thomas v. People,* 803 P.2d 144, 153–54 (Colo.1990). "The trial court is responsible for ensuring that the jury is properly instructed on the law and that a conviction on any count is the result of a unanimous verdict." *People v. Rivera,* 56 P.3d 1155, 1160–61 (Colo.App.2002).

■ When evidence of many acts is presented, any one of which could constitute the offense charged, the trial court must take one of two actions to ensure jury unanimity: (1) require the prosecution to elect the transaction on which it relies for the conviction, or

(2) if there is not evidence to differentiate between the acts and there is a reasonable likelihood that jurors may disagree on the act the defendant committed, instruct the jury that to convict it must agree unanimously that the defendant committed the same act or that the defendant committed all of the acts included within the period charged. *See Thomas,* 803 P.2d at 153–54; *Rivera,* 56 P.3d at 1160.

■ There are however several exceptions to this rule. "[W]hen the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular instance." *Quintano,* 105 P.3d at 593 (quoting *Thomas,* 803 P.2d at 153–54). Additionally, when a defendant is charged with crimes occurring in a single transaction, the prosecutor need not elect among the acts, and the trial court need not give a modified unanimity instruction. *Melina v. People,* 161 P.3d 635, 639–40 (Colo. 2007).

### A. Unanimity for Count 1 Involving S.D.

■ Defendant contends that the trial court abused its discretion because the People's election of the specific act defendant committed for count 1 was insufficient to allow the jury to reach a unanimous decision. We disagree.

■ A trial court has discretion to decide whether there is a reasonable likelihood that jurors may disagree on the act the defendant committed. *People v. Gookins,* 111 P.3d 525, 528 (Colo.App.2004). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Dunlap,* 124 P.3d 780, 798–99 (Colo.App.2004).

In *Thomas,* a defendant was convicted of two counts of sexual assault on a child. 803 P.2d at 146. The victims were ages three and five at the time of the molestation. Trial testimony indicated that the improper contact consisted of genital fondling and oral and anal sex. The trial court required the prosecution to select a specific sexual act for each charge but did not require the designation of a particular time or date. The prosecution

selected the touching of the defendant's hands to one victim's vaginal area and the touching of the defendant's penis to another victim's anal area as being the criminal acts underlying the charged offenses.

In rejecting the defendant's claim that the prosecution should have been required to select a specific incident, the *Thomas* court held that "when the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular instance." *Id.* at 153. The court also held that any error in not instructing the jury that it must be unanimous on the same act was harmless because the prosecution made an election of an act as to each victim, the defense was a general denial, and there was no rational basis for some jurors to predicate guilt on one act while other jurors based it on another. *Id.* at 154–55.

> Here, the verdict form for count 1 stated: SEXUAL ASSAULT ON A CHILD—VICTIM LESS THAN 15
>
> (The first touch of [S.D.'s] butt in the drive thru).

At trial, defendant objected that this verdict form was insufficient to ensure that the jury unanimously found that he was guilty of the same instance of touching S.D.'s buttocks because S.D. had testified to as many as six instances of touching. The trial court found that the People's election and the verdict form were sufficient: "there [was] some vagueness as to exact details of first touch, but nonetheless, I think this will be sufficient to allow the jury to focus on that and determine exactly what it is that they are talking about in rendering a verdict on this count."

During the People's direct examination of S.D., the following colloquy regarding defendant touching S.D.'s buttocks took place:

Q I want to ask you about this first time. How did it make you feel when he did that?

A I didn't think anything of it at first, because, you know, as I said, I thought he was like watching me and making sure I was doing okay. And so at first I didn't think anything. I didn't think anything of this. I thought it was an accident.

Q When he came back the second time, where was he standing in relation to you?

A In back of me again.

Q And did he touch you again?

A Yes, he did.

S.D. described how defendant repeated the same act (the touching of her buttocks with his hand) several times. S.D. was the only witness who testified as to defendant's conduct in the drivethru, and so there was less likelihood of juror confusion. As in *Thomas*, defendant's defense was general and designed to show that none of the incidents alleged by S.D. occurred. *See Thomas*, 803 P.2d at 155. Further, the evidence presented no basis for jurors to conclude that one of the alleged touchings of S.D.'s buttocks occurred but the others did not. *See People v. Hansen*, 920 P.2d 831, 837 (Colo.App.1995) (trial court's failure to require an election of the acts or give a specific jury instruction did not violate unanimity principles where nothing in the evidence would have led jury to find the defendant committed one type of repeated sexual abuse but not another type).

Therefore, the trial court did not abuse its discretion in rejecting defendant's request to give a modified unanimity instruction or in requiring the prosecution to more specifically elect an act or acts to support count 1. *See People v. Noble*, 635 P.2d 203, 211 (Colo.1981) (no deprivation of right to unanimous verdict where jury was instructed on general requirement of unanimous verdict and ample evidence supported guilty verdict on either or both methods of committing offense).

### B. Unanimity for Count 2—Pattern of Abuse Involving S.D.

Defendant contends his conviction on the count 2 pattern of abuse sentencing enhancer should be reversed. He asserts that neither the instruction defining a pattern of abuse nor the verdict form required the jury to make a unanimous decision on the act that constituted the predicate offense and the People failed to elect the predicate act with specificity. We disagree.

As noted, a trial court has discretion to decide whether there is a reasonable likelihood that jurors may disagree on the act the

defendant committed. *Gookins,* 111 P.3d at 528–29.

■■■ To prove a pattern of abuse under section 18–3–405(2)(d), the prosecution must prove beyond a reasonable doubt that (1) the defendant committed an act charged under section 18–3–405(1) that constituted the predicate offense for section 18–3–405(2)(d); and (2) the other act or acts constituting the pattern of sexual abuse were committed prior to or at any time after the predicate offense. § 18–3–405(2)(d); *see also People v. Kyle,* 111 P.3d 491, 502 (Colo.App. 2004). A "[p]attern of sexual abuse" is "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim." § 18–3–401(2.5). "Under [section] 18–3–405(2)(d), a pattern of sexual abuse is a sentence enhancement factor that, like the substantive predicate offense, must be proved beyond a reasonable doubt." *Kyle,* 111 P.3d at 501. Unanimity principles also apply when there is an enhancement for sexual assault on a child as part of a pattern of sexual abuse. *See id.* at 502.

Here, in count 2, the People charged defendant with sexual assault on a child for "[r]ubbing his penis on [S.D.'s] butt in the drive thru." Defendant objected to the pattern of sexual abuse interrogatory as part of the count 2 verdict form because it did not require the jury to make a unanimous decision on which act it relied upon for the pattern of sexual abuse. The trial court overruled this objection, stating that it would not "require from the jury that they answer an additional interrogatory essentially determining the guilt of the defendant on either the prior Count 1, or perhaps some other uncharged offense." The jury found that defendant committed a pattern of sexual abuse and marked the pattern interrogatory that stated, "We the jury, unanimously find, beyond a reasonable doubt, that the defendant committed the act as part of a pattern of sexual abuse."

We reject defendant's argument that the People failed to specify a predicate act for the pattern count. In count 2, the People elected the "rubbing [of] his penis on [S.D.'s] butt in the drive thru" as the second predicate act. The jury returned a unanimous verdict as to count 2 and defendant does not challenge the unanimity of this verdict on appeal. In count 1, the People elected the first touch of S.D.'s buttocks, and the jury returned a unanimous verdict as to this specific act as discussed above. Thus, the People adequately elected the specific acts underlying each count which constituted the pattern of sexual abuse. Therefore, any error the trial court may have committed in not also providing a modified unanimity instruction for the pattern interrogatory was harmless. *See Thomas,* 803 P.2d at 154; *see also People v. Brown,* 70 P.3d 489, 492 (Colo.App. 2002) (concluding that jury could not have convicted the defendant of pattern of sexual abuse without unanimously finding that he committed the two alleged acts).

We also reject defendant's argument that the prosecutor's statements in closing indicated to the jury that it was not required to find unanimously that defendant committed the same predicate acts for the pattern. In closing, the prosecutor highlighted the elected act for count 2 (rubbing defendant's penis on S.D.'s butt). The prosecutor also recited the definition of pattern of sexual abuse from the instructions, which tracked the statutory language. He then stated:

> Two or more incidents of sexual contact involving a child. Ladies and gentlemen, she was able to describe there was a definite, distinct difference between the first contact when he touched her and he left, he came back again and touched her again, he left. He came back and touched her again and left. He came back and rubbed himself upon her. There was a break between each. That's two or more incidents.

Nothing about this statement was a misstatement of the unanimity requirement or the elected acts for count 1 and 2. Instead, the prosecutor was reiterating his election of the specific act for count 1 (first touching of S.D.'s butt) and count 2, albeit in a less precise fashion than stated on the verdict form.

### C. Unanimity for Counts 4–8 Involving S.S.

■■■ Defendant next argues that the trial court erred in merging counts 4–8 because

merger did not resolve the unanimity problem created by the court's rejection of his proposed modified unanimity instruction. We agree.

Whether a defendant was denied due process of law by the prosecution's failure to elect the particular acts on which it relied for counts 4–8 is a question of law that we review de novo. *See Quintano*, 105 P.3d at 592.

Here, counts 3–8 concerned defendant's acts committed against S.S. The jury acquitted defendant on count 3, unlawful sexual contact—no consent—with force. The verdict form specified that count 3 concerned defendant's acts "[i]n the freezer." Counts 4–8 were each for unlawful sexual contact. The verdict forms for counts 4–8 did not specify an act but included a form of unanimity instruction which provided that if the jury found defendant guilty of the count it must mark one of two options:

> * * [ ] We, the jury unanimously and beyond a reasonable doubt find that the Defendant committed a specific act and we are using that specific act to support our verdict on this count and this act is different than any used to support verdicts on any other count of UNLAWFUL SEXUAL CONTACT—NO CONSENT.

> * * [ ] We the jury do not so find.

The jury found defendant guilty of counts 4–8. Nevertheless, it marked the latter box stating, "We the jury do not so find," indicating that it was not unanimously finding that defendant committed a specific act to support its verdict on each of the verdict forms for counts 4–8.

Defendant made a post-trial motion for a new trial, arguing that the jury was not unanimous as to the specific acts he committed that supported counts 4–8. The trial court denied the motion for a new trial, stating:

> The jury clearly found that the defendant was guilty, and the interrogatory was designed to essentially address any concern there might be about unanimity or election of the events that were testified to by the victims.

In the particular count, on Counts 4 through 8, I do find that basically *the jury was not unanimous and did not find beyond a reasonable doubt that a specific act was being selected.* I don't find the unanimity problem with this particular interrogatory, or the indication that the jury was not otherwise unanimous with their verdict. I find they *were not able to specify the act that they were using to support the verdict* could be a different count, or a different act than that used in the verdicts on the other unlawful sexual contact without consent. The Court finds the merger of the counts would be appropriate and I will sentence as if there was one guilty verdict on unlawful sexual contact without consent.

(Emphasis added.)

After specifically finding that "the jury was not unanimous and did not find beyond a reasonable doubt" that defendant committed a specific act to support each count, the trial court attempted to solve the unanimity problem by merging the five counts into one count. The merger may have resolved defendant's double jeopardy concerns. *See Woellhaf,* 105 P.3d at 219–20 (concluding that merging four convictions of sexual assault on a child into one conviction resolved defendant's complaint of double jeopardy violation). However, it did not resolve the unanimity problem.

The jury rejected a finding of unanimity as set forth in the modified unanimity instruction with respect to each of the five counts. Unlike the verdict forms for counts 1–2, in which the People elected specific acts to support the underlying counts, the People did not elect specific acts for counts 4–8 and the verdict forms are otherwise silent in this respect.

Our review of the transcript reveals that evidence was presented that would have allowed jurors to rely on different acts in deciding to convict on the five separate counts. There were inconsistencies in S.S.'s testimony. She told an investigator before trial that defendant had grabbed her buttocks twenty or thirty times. In contrast, at trial she stated that she did not remember

telling the investigator that defendant had grabbed her buttocks. Rather, she testified that defendant had stood behind her and while both were fully clothed pressed his penis against the center of her buttocks.

Additionally, other than the freezer incident, which the People charged in a separate count, nothing in the evidence enabled the jury to distinguish between the different touchings. *See Thomas,* 803 P.2d at 155 ("nothing in the evidence distinguished the various acts that could have been the basis for conviction on any particular count") (citing *State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680, 696 (N.M.Ct.App.1989)). Therefore, we reverse defendant's conviction on counts 4–8 because "it is impossible to be reasonably certain of the reliability of the judgment of conviction." *Gookins,* 111 P.3d at 528 (quoting *Woertman v. People,* 804 P.2d 188, 192 (Colo.1991)).

Having reached this conclusion, we need not address defendant's remaining contentions with respect to counts 4–8.

### IV. Expert Endorsement

Defendant next contends that his convictions should be reversed because he was deprived of his due process rights to a fair trial under both the United States and Colorado Constitutions when the trial court allowed a witness whom the prosecution had endorsed only as a lay witness to testify as an expert. We disagree.

While defendant now couches his argument in terms of a violation of his due process rights, below he only challenged the trial court's interpretation of the discovery requirements in Crim. P. 16. Other than *Tillery,* we are aware of no case, nor does defendant cite any, applying plain error review to a general due process argument that was not preserved.

 To the contrary, our supreme court continues to state that appellate courts should not reach constitutional arguments raised for the first time on appeal. *Martinez v. People,* 244 P.3d 135, 139 (Colo.2010) (citing *People v. Cagle,* 751 P.2d 614 (Colo. 1988)); *see also City & County of Broomfield v. Farmers Reservoir & Irrigation Co.,* 239 P.3d 1270, 1276 (Colo.2010) (reiterating that an appellant must raise each "separate and independent" constitutional claim in the trial court before it can be raised for the first time on appeal and citing *Rose v. City & County of Denver,* 990 P.2d 1120, 1121 (Colo.App. 1999), which held that because plaintiff raised claims under the Fourth and Fourteenth Amendments in the trial court, he could not raise an unpreserved claim under the First Amendment); *People v. McMurtry,* 122 P.3d 237, 241–42 (Colo.2005) (citing *Cagle* and noting that a defendant may only raise his constitutional right to speedy trial on appeal if he first raised it in the trial court).

 In declining to reach defendant's unpreserved due process claim, we acknowledge some precedential inconsistency as noted in the concurring opinion. However, we view defendant's unpreserved double jeopardy claim, which we reached in Part II in the exercise of our discretion under *Hinojos–Mendoza v. People,* 169 P.3d 662, 667–68 (Colo.2007), as distinguishable from his due process claim for several reasons.

First, the double jeopardy claim could be reviewed as a matter of law apart from a fully developed factual record. Second, the consequences of error are merely remanding to vacate one sentence, not reversing and ordering a retrial. *See People v. Sepulveda,* 65 P.3d 1002, 1008 (Colo.2003) (noting "social costs of reversal and retrial," including "witnesses' memories fade, witnesses move away and victims hesitate to testify again"). Third, even if the double jeopardy objection had been raised before trial as to the charging document, the other charge or charges would still proceed to trial, and so the purpose of conserving judicial resources by affording the trial court an opportunity to correct error and thereby avoid a retrial does not apply. *See People v. Pahl,* 169 P.3d 169, 183 (Colo.App.2006) (purpose of contemporaneous objection rule to conserve judicial resources). Fourth, because the double jeopardy claim ripens only upon conviction of multiple offenses, an appeal of the conviction for the greater offense would be likely even if defendant had raised double jeopardy after verdict and the trial court had corrected the alleged error at sentencing.

■ In contrast to his newly raised due process claim, defendant devoted his entire argument regarding the expert below to a misapplication of Crim. P. 16, which he also raises here in conjunction with his due process claim. Evaluating that claim would require considering prejudice from lack of notice, on which the record may not be complete and the trial court was not afforded an opportunity to rule. *See United States v. Williams,* 576 F.3d 385, 388–91 (7th Cir.2009) (reviewing for abuse of discretion defendant's claim that denial of a continuance based on government's "surprise" witness was prejudicial). Were we to conclude on due process grounds that the trial court should have precluded all testimony from the expert, reversal and retrial would be required. *Cf. People v. Veren,* 140 P.3d 131, 139–40 (Colo.App.2005). And for this reason, entertaining the unpreserved due process issue on appeal risks defendants "gambling for favorable verdicts and then resorting to appeal on errors that might easily have been corrected by objection at trial." *People v. Petschow,* 119 P.3d 495, 505 (Colo.App.2004).

Therefore, we elect to reach only defendant's concerns with the disclosure requirements of Crim. P. 16.

■ Traditional principles of statutory construction inform the analysis of court rules. *Leaffer v. Zarlengo,* 44 P.3d 1072, 1078 (Colo.2002). Hence, we are not free to depart from the plain language of a supreme court rule. *People v. Jackson,* 972 P.2d 698, 700 (Colo.App.1998).

Crim. P. 16(I)(a)(1)(VII) requires the prosecutor to provide the defendant with "[a] written list of the names and addresses of the witnesses then known to the district attorney whom he or she intends to call at trial." Crim. P. 16 does not specifically state how a witness must be endorsed—as a lay witness or an expert witness. However, if a witness that the prosecution intends to call at trial is an expert, the prosecution must provide pertinent reports and statements at least thirty days before trial. Crim. P. 16(I)(a)(1)(III), (b)(3).

The prosecutor endorsed Ann Smith as a witness in the complaint and information. However, she was not specifically identified as an expert witness. During the trial, the prosecutor stated his intention to call Smith as an expert. Defense counsel objected because Smith had not been endorsed as an expert. The prosecutor admitted that Smith had not been endorsed as an expert but said that Crim. P. 16 does not set forth a specific requirement that an expert be identified as an expert.

The trial court overruled defense counsel's objection, agreeing with the prosecution that Crim. P. 16 does not specifically require a witness to be identified as an expert, but said that defendant could raise other foundational challenges to Smith's expert testimony. The trial court later qualified Smith as an expert in forensic interviewing and child maltreatment.

While it might have been a better practice for the prosecution to specifically identify Smith as an expert witness, we do not read Crim. P. 16 to require such an endorsement. Unlike the civil rules, which compel voluntary disclosure of experts, the Colorado Rules of Criminal Procedure do not. Like the federal rules, *see* Fed.R.Crim.P. 16(a)(1)(G), the Colorado Rules of Criminal Procedure require the defendant to request and justify specific discovery regarding experts in cases where no report or statement by the expert has been provided to the prosecutor. *See* Crim. P. 16(I)(d)(3). Thus, we recognize an anomaly between our civil and criminal procedural rules concerning the disclosure of experts.

■ Contrary to defendant's assertion, Crim. P. 16(I)(d)(3) does not require that the prosecution have disclosed experts as endorsed witnesses prior to trial. Instead, the rule places the burden on the defendant to request such information unless the court sua sponte issues such an order. The rule only provides that a court may, upon motion, require disclosure to the defense of relevant material which the prosecutor is not otherwise compelled to disclose. "Where the interests of justice would be served, the court may order the prosecution to disclose the underlying facts or data supporting the opinion ... of an expert endorsed as witness."

Crim. P. 16(I)(d)(3). Here, defendant made no such request, although the record indicates his counsel's awareness that Smith had given expert testimony in other cases. And there were no statements or reports made by the witness prior to trial. Additionally, defendant's claim that he was unfairly surprised and unable to prepare adequately for cross-examination is discredited by his failure to move for a continuance. *See People v. Wieghard,* 727 P.2d 383, 386 (Colo.App.1986) (concluding that the defendant's failure to move for a continuance discredited any claim of prejudice).

We also reject defendant's argument that under Crim. P. 57(b) the trial court should have looked to C.R.C.P. 26(a)(2)(A) to resolve any ambiguity in the endorsement requirements. Crim. P. 57(b) provides that the trial court may look to the Rules of Civil Procedure "[i]f no procedure is specifically prescribed by [a criminal] rule." Crim. P. 16 specifically dictates the procedures for discovery in criminal cases and defendant cites no authority for the proposition that C.R.C.P. 26 should apply to criminal discovery issues. And even assuming some ambiguity in Crim. P. 16(I)(a)(1)(VII) regarding the specific type of a witness endorsement, Crim. P. 57(b) states that the trial court "may proceed" to apply the Rules of Civil Procedure. The trial court was therefore not required by Crim. P. 57(b) to utilize C.R.C.P. 26(a)(2)(A), and we discern no violations of Crim. P. 16.

## V. Conclusion

The judgment is reversed as to the convictions related to S.S. (counts 4–8), and the case is remanded for further proceedings consistent herewith. The judgment is otherwise affirmed.

Judge WEBB concurs.

Judge J. JONES specially concurs.

Judge J. JONES specially concurring.

I agree with the result reached by the majority. But I disagree with one aspect of the majority's decision: its refusal to address defendant's argument that the prosecution's failure to notify him before trial that Ann Smith would give expert testimony violated his constitutional right to due process. The majority explains its refusal to consider that issue primarily by citing *Martinez v. People,* 244 P.3d 135, 139 (Colo.2010), which in turn cites *People v. Cagle,* 751 P.2d 614 (Colo. 1988); *People v. McMurtry,* 122 P.3d 237 (Colo.2005); and a civil case, for the proposition that we may not consider constitutional arguments raised for the first time on appeal. And yet, the majority addresses another constitutional argument that defendant raises for the first time on appeal, namely, that certain of his convictions violate the constitutional prohibition against double jeopardy. The majority explains this inconsistency by citing *People v. Tillery,* 231 P.3d 36 (Colo. App.2009) (*cert. granted* May 24, 2010), in which a division of this court concluded that an appellate court may address an unpreserved double jeopardy claim. *Tillery,* however, cited no Colorado Supreme Court case holding that a double jeopardy claim is exempt from the general rule the majority applies to defendant's due process claim. Rather, the division merely cited reasons why such an exception would be appropriate. It is not apparent to me, however, that a division of this court is free to carve out an exception to a rule articulated by the supreme court (assuming that such a rule exists). The majority in this case then further confuses the issue, in my view, by stating that it addresses the double jeopardy claim "in the exercise of our discretion under *Hinojos–Mendoza v. People,* 169 P.3d 662, 667– 68 (Colo.2007)...." But if such review is discretionary, how does the majority account for the rule barring such review on which it relies to refuse to consider defendant's due process argument?

Notwithstanding the majority's reference to discretion, it apparently believes that there is a general rule barring an appellate court from reviewing unpreserved constitutional contentions for plain error, but that double jeopardy is an exception to the rule. I disagree. Neither *Martinez, Cagle, McMurtry,* nor any other opinion from the supreme court establishes a categorical rule that an appellate court cannot review unpreserved constitutional contentions for plain error, subject only to a few limited exceptions.

To the contrary, several cases, as discussed below, strongly suggest that such contentions are reviewable for plain error, subject to a couple of exceptions. However, given the muddled state of Colorado case law on this question, I understand how the majority might conclude otherwise. This state of the case law has resulted in substantial disagreement among the judges of this court as to (1) whether we may review unpreserved contentions of constitutional error, and, if so, (2) what types of unpreserved contentions we may review. This disagreement, in turn, manifests itself in numerous irreconcilable decisions of divisions of this court.

The problems created by this confusion would be resolved if Colorado appellate courts applied our plain error rule, Crim. P. 52(b), in the same way the federal courts apply Fed.R.Crim.P. 52(b). To fully explain the reasons for my recommendation, I begin by comparing the state and federal plain error tests; then show how Colorado case law has deviated from the text and purpose of Rule 52(b), resulting in erroneous and contradictory applications of the rule; and finally discuss why the federal plain error test is preferable.[1]

### I. Crim. P. 52(b) and the Current Plain Error Test Thereunder

Crim. P. 52 provides:

(a) **Harmless Error.** Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.

(b) **Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Several things about Crim. P. 52(b) are noteworthy. First, only unpreserved errors that are "plain" and affect "substantial rights" may be reviewed. Second, the rule's text does not exclude any species of any such error from its purview. Third, and most importantly, the appellate court is not re-

quired to notice any such error. Rather, the use of the term "may" plainly indicates that the appellate court has discretion to notice— i.e., to remedy—any such claimed error.

As presently articulated and applied, plain error review in Colorado criminal cases entails a three-part inquiry: (1) whether there was an error; (2) whether the error was "plain," meaning the error must have been clear or obvious; and (3) whether the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005); *People v. Cook*, 197 P.3d 269, 275–76 (Colo.App.2008). The third part of the test seems to be an exposition of what it means for an error to be "substantial," as it focuses on whether the error was prejudicial. *People v. Vigil*, 127 P.3d 916, 930 (Colo.2006). But missing from this formulation of the test is any recognition of the discretion to notice error expressly granted by Rule 52(b).

### II. Fed.R.Crim.P. 52(b) and the Federal Plain Error Test

Fed.R.Crim.P. 52(b) is substantially identical to Crim. P. 52(b).[2] In *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court squarely addressed the test to be applied under the federal rule. It began its analysis by observing that " '[n]o procedural principle is more familiar to this Court than that a constitutional right' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Id.* at 731, 113 S.Ct. 1770 (quoting in part *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944)). The Court went on to hold that even if there is (1) forfeited error that is both (2) obvious and (3) substantial, an appellate court retains discretion to remedy the error. Indeed, the Court viewed that discretion as a significant brake on the

---

1. Judge Bernard recently covered some of this territory in his concurring opinion in *Tillery*, 231 P.3d at 52–59 (Bernard, J., specially concurring). My views on the matter, however, differ somewhat from his.

2. Fed.R.Crim.P. 52(b) originally referred to "[p]lain errors or defects," just as Crim. P. 52(b) does. The federal rule was amended in 2002 to delete "or defects."

power to recognize forfeited claims of error, holding that discretion under the rule should be employed only "in those circumstances in which a miscarriage of justice would otherwise result," *id.* at 736, 113 S.Ct. 1770 (internal quotation marks omitted), and opining that absent this limitation, "the discretion afforded by Rule 52(b) would be illusory." *Id.* at 737, 113 S.Ct. 1770.

The Court explained that although the "miscarriage of justice" part of the test is not limited to cases of actually innocent defendants, it remains limited to cases where the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736, 113 S.Ct. 1770 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936); brackets in *Olano* ).

The *Olano* Court's insistence that the discretion afforded by the rule is intended to limit, rather than expand, the class of unpreserved errors that should be noticed on appeal was informed by *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), in which the Court had held that the plain error exception to the preservation rule should be used sparingly. The Court in *Young* explained:

> Any unwarranted extension of this exacting definition of plain error would skew the Rule's "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." Reviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection—a practice which we have criticized as "extravagant protection."

*Id.* at 15–16, 105 S.Ct. 1038 (citations omitted; quoting in part *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), and *Namet v. United States*, 373 U.S. 179, 190, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963)).

In *Miller*, 113 P.3d 743, the Colorado Supreme Court held that unpreserved claims of constitutional error are reviewed for plain error. In the course of analyzing the issue, the court discussed *Olano*, but only to the extent of noting *Olano*'s observation that constitutional errors may be forfeited. The court did not, however, adopt the fourth prong of the *Olano*–Fed. R.Crim. P. 52(b) plain error test—that the error must be one seriously affecting the fairness, integrity, or public reputation of judicial proceedings. Since *Miller* was decided, our appellate courts have consistently applied the three-prong test. *See, e.g., Cook,* 197 P.3d at 275–76.

Thus, under current case law, Colorado appellate courts deem irrelevant under Crim. P. 52(b) what the Supreme Court views as indispensible under identically-worded Fed. R.Crim.P. 52(b)—the discretionary nature of the remedy allowed by the rule.

### III. *Cagle* and Its Fallout

In *Cagle,* 751 P.2d 614, the defendant claimed on appeal that a statute prohibiting possession of certain controlled substances was unconstitutional. The People urged that the defendant had failed to preserve the claim for appellate review. The court held that the issue was preserved. But, virtually in passing, the court stated: "It is axiomatic that this court will not consider constitutional issues raised for the first time on appeal...." *Id.* at 619. This statement, which was clearly dictum, has since taken on a life of its own.

In a number of cases, the supreme court and divisions of this court have invoked this statement from *Cagle* to decline to review a broad variety of unpreserved claims of constitutional error, not merely those challenging the constitutionality of statutes. *See, e.g., Martinez,* 244 P.3d at 139 (court of appeals should not have considered the defendant's argument under the Colorado Constitution that the prosecutor had engaged in misconduct during closing argument); *McMurtry,* 122 P.3d at 241 (a defendant may not raise a claim of denial of constitutional right to a speedy trial for the first time on appeal); *People v. Knott,* 83 P.3d 1147, 1148–49 (Colo.App.2003) (unpreserved due process and double jeopardy challenges to sentencing procedures); *People v. Kitsmiller,* 74 P.3d 376, 378 (Colo.App.2002) (due process claim

that the defendant was entitled to an evidentiary hearing); *People v. Hall,* 59 P.3d 298, 301 (Colo.App.2002) (due process challenge to district court's rejection of a lesser included offense instruction); *People v. Scialabba,* 55 P.3d 207, 209–10 (Colo.App.2002) (constitutional right to a speedy trial); *People v. Collie,* 995 P.2d 765, 775 (Colo.App.1999) (right to an extended proportionality review under the Eighth Amendment).

In many cases, however, the supreme court and divisions of this court have reviewed unpreserved claims of constitutional error (including due process claims). *See, e.g., Hinojos–Mendoza,* 169 P.3d at 667 (unconstitutionality of a statute, both facially and as applied; Confrontation Clause); *Vigil,* 127 P.3d at 929–30 & n. 9 (Confrontation Clause); *Domingo–Gomez v. People,* 125 P.3d 1043 (Colo.2005) (improper closing argument implicating the right to a fair trial before an impartial jury); *Miller,* 113 P.3d at 748–50 (due process error in instructions pertaining to intoxication); *Auman v. People,* 109 P.3d 647, 663–66 (Colo.2005) (instructional error of constitutional dimension); *People v. Harlan,* 8 P.3d 448, 489–90 (Colo.2000) (instructional error cognizable under the Eighth Amendment); *Harris v. People,* 888 P.2d 259, 263–67 (Colo.1995) (prosecutorial misconduct in closing argument); *People v. Kruse,* 839 P.2d 1, 3 (Colo.1992) (Fifth Amendment right against self-incrimination; stating that plain error review is an exception to the rule that a claim of error must first be raised in the trial court); *Armstrong v. People,* 701 P.2d 17, 21 (Colo.1985) (reviewing a claim of ineffective assistance of counsel because it "concern[ed] a fundamental constitutional right"); *People v. Hardin,* 199 Colo. 229, 234, 607 P.2d 1291, 1294 (1980) (due process violation of failure to instruct the jury on the mental state element of the offense); *Vigil v. People,* 196 Colo. 522, 524–25, 587 P.2d 1196, 1197–98 (1978) (restriction on right to cross-examine a witness); *People v. Archuleta,* 180 Colo. 156, 158–60, 503 P.2d 346, 347 (1972) (instructional error; stating, "Where plain error affecting substantial rights appears, this Court in the interest of justice may and should deal with it, even though it is raised for the first time on appeal."); *Hines v. People,* 179 Colo. 4, 6, 497

P.2d 1258, 1259–60 (1972) (claim that prosecutor had improperly commented on the defendant's invocation of his right to remain silent); *People v. Herron,* 251 P.3d 1190, 1192 (Colo.App.2010) (alleged double jeopardy error; multiplicitous convictions); *Tillery,* 231 P.3d at 44, 47–48 (prosecutorial misconduct in closing argument and double jeopardy violation in sentencing; discussing split in Colorado Court of Appeals decisions as to whether unpreserved double jeopardy claims are reviewable on appeal); *People v. Stevenson,* 228 P.3d 161, 170–71 (Colo.App.2009) (claim of improper closing argument; citing *Miller* for the proposition that "plain error standards apply to constitutional errors challenged for the first time on appeal"); *People v. Petschow,* 119 P.3d 495, 499 (Colo.App. 2004) (instructional error); *People v. Ullerich,* 680 P.2d 1306, 1307 (Colo.App.1983) (waiver of right to testify).

These cases rarely mention *Cagle.* In *Hinojos–Mendoza,* the supreme court acknowledged the critical statement from *Cagle,* but nonetheless chose to address the Confrontation Clause issue, exercising its "discretion to review these constitutional challenges...." *Hinojos–Mendoza,* 169 P.3d at 667. In *Tillery,* the majority acknowledged *Cagle*'s apparent prohibition against reviewing unpreserved claims of constitutional error, but nonetheless concluded that double jeopardy claims constitute an exception to the rule of *Cagle.* In the course of analyzing the question, the majority observed that divisions of this court have disagreed whether *Cagle* bars review of unpreserved double jeopardy claims. *Tillery,* 231 P.3d at 47–48.

The upshot is that although our appellate courts do not consistently apply the broad language in *Cagle,* they continue to invoke it with some regularity as to various types of claimed constitutional errors. This has led to irreconcilable conflicts in case law that, to me, are intolerable.

Whenever possible, our rules of decision should be sufficiently clear to enable the parties to know whether an appellate court will address an issue and, if so, what standard of review it will apply. But the law in this area lacks clarity with respect to wheth-

er the appellate court will consider an unpreserved claim of constitutional error. Indeed, the lack of clarity is so pronounced that for many years the judges of this court have been utterly unable to reach a consensus, or anything remotely approaching a consensus, on the issue. Because the members of this court are presented routinely with unpreserved claims of constitutional error, this confusion and disagreement cannot but cast the judiciary in an unflattering light.

It is one thing to identify a problem. It is another to come up with a solution to the problem. Because I believe that doing the latter ordinarily should follow the former, I first discuss below why I believe the broad statement from *Cagle* is wrong and then why I believe we should apply plain error review to unpreserved claims of constitutional error using the federal four-part test.

### IV. The Solution

#### A. The Broad Language from *Cagle* Should Be Disavowed

As noted, *Cagle* involved a challenge to the constitutionality of a statute, one that the court determined was preserved for appellate review. The court went further than it needed to decide the case by opining broadly that "[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal...." *Cagle,* 751 P.2d at 619. In my view, continuing to lend credence to this statement is unwise for several reasons.

First, *Cagle* does not mention Crim. P. 52(b), which, as previously discussed, governs appellate review of unpreserved claims of error in criminal cases, provides for plain error review of such claims, and makes no exception for constitutional claims.

Second, *Cagle* fails to acknowledge the long line of prior cases, some of which are cited above, in which the supreme court and divisions of this court considered unpreserved claims of constitutional error for plain error. Some of those cases expressly recognize that plain error review of such claims is appropriate, going so far as to say a court "should" review such claims if necessary to vindicate substantial rights. *See Archuleta,* 180 Colo. at 158–60, 503 P.2d at 347.

Third, *Cagle* cited two *civil* cases, *Colgan v. State,* 623 P.2d 871 (Colo.1981), and *Manka v. Martin,* 200 Colo. 260, 614 P.2d 875 (1980), in support of the broad pronouncement at issue. Reliance on such cases is questionable, however, because the Colorado Rules of Civil Procedure do not contain a counterpart to Crim. P. 52(b). *See Wycoff v. Grace Community Church,* 251 P.3d 1260, 1269 (Colo.App.2010). And because liberty and sometimes life are at stake in criminal cases, courts should be somewhat more solicitous, though not overly so, of unpreserved claims of error in criminal cases than they should be in civil cases. *See Olano,* 507 U.S. at 735–36, 113 S.Ct. 1770 (" '[I]n criminal cases, where the life, or as in this case the liberty, of the defendant is at stake, the courts of the United States, in the exercise of a sound discretion, may notice [forfeited error].' " (quoting *Sykes v. United States,* 204 F. 909, 913–14 (8th Cir.1913); brackets in *Olano* )).[3]

Fourth, as another division of this court has noted, reconciling a broad reading of the critical language in *Cagle* with subsequent case law seems impossible. *See Tillery,* 231 P.3d at 47. In *Miller,* for example, the court answered the question whether unpreserved claims of constitutional error are reviewed for harmless error or plain error. The court concluded that unpreserved claims of constitutional error are reviewed for plain error, a position consistent with many Colorado decisions and Supreme Court cases applying Fed.R.Crim.P. 52(b). *Miller,* 113 P.3d at 748–50; *see also Johnson v. United States,* 520 U.S. 461, 468–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (even alleged structural error is subject to plain error review); *Griego v. People,* 19 P.3d 1, 7–8 (Colo.2001) (constitutional trial errors are subject to harmless or plain error review); *People v. Dunlap,* 975 P.2d 723, 736–37 (Colo.1999) (same). Not only is the holding in *Miller* at odds with the broad language from *Cagle* at issue, *Miller's* entire discussion would have been unnecessary if, as *Cagle* said in dictum,

**3.** For these same reasons, I am unpersuaded by the majority's reliance on civil cases.

unpreserved claims of constitutional error are not reviewable at all.

*Cagle*'s language could be read as limited to its context—that is, to constitutional challenges to statutes. Both *Colgan* and *Manka*, to which *Cagle* cited, involved such challenges. But so reading *Cagle* is problematic because, as noted, the supreme court occasionally has applied the broad language of *Cagle* in other contexts, most recently in *Martinez*, 244 P.3d at 139 (prosecutorial misconduct claim under the Colorado Constitution).

In any event, I perceive no principled basis for a rule categorically shielding challenges to the constitutionality of statutes from plain error review.[4] To be sure, there are cases in which a claim of error requires development of a factual record and factual findings, without which an appellate court cannot properly serve its appellate function. Some challenges to the constitutionality of statutes, particularly as applied challenges, could fall into that category. *See People v. Patrick*, 772 P.2d 98, 100 (Colo.1989); *People v. Veren*, 140 P.3d 131, 140 (Colo.App.2005). But most challenges to the constitutionality of statutes are facial challenges or otherwise do not require development of a factual record. *See, e.g., Hinojos–Mendoza*, 169 P.3d at 667–70 (addressing both facial and as applied challenges to the constitutionality of a statute, neither of which had been raised in the trial court).[5]

In sum, *Cagle* cannot be reconciled with Rule 52(b) or other case law. Nor do I believe it is possible to limit *Cagle* to a certain category of cases: that horse has left the barn. Hence, it seems preferable to me for those with the power to do so to say that

*Cagle* is simply an incorrect statement of Colorado law. *See Harlan*, 8 P.3d at 474 (disapproving certain prior case law), *overruled on other grounds by Miller*, 113 P.3d at 748.

### B. Certain Claimed Errors Are Unreviewable

Notwithstanding my disagreement with *Cagle*, I believe there are situations in which an appellate court should not consider a claim raised for the first time on appeal in a criminal case. None of them, however, are based on whether the claim arises under the federal or state constitutions.

First, we may lack jurisdiction to grant relief. There may not be an appealable order, the notice of appeal may be untimely, or we may simply lack subject matter jurisdiction.

Second, as alluded to above, a claim which requires development of a factual record and factual findings should not be reviewable on appeal, even for plain error, unless raised and ruled on in the trial court. As both federal and Colorado decisions have explained, this is because, in such cases, our determination of whether there was error (the first step in plain error review) is stymied from the outset: absent an adequate record and findings, we simply cannot determine whether the trial court erred.[6] *See United States v. Svacina*, 137 F.3d 1179, 1186–87 (10th Cir.1998); *Patrick*, 772 P.2d at 100; *see also United States v. Zubia–Torres*, 550 F.3d 1202, 1209–10 (10th Cir.2008) (lack of factual record made it impossible to determine if the defendant's substantive rights were affected).

---

**4.** One could argue that the interest in judicial efficiency is served by requiring defendants to raise a constitutional challenge to a statute at trial or forever be barred from asserting it. After all, if the defendant is correct in his claim, a trial may have been avoided. But the same can be said for many other types of constitutional claims. Indeed, the same can be said for many types of nonconstitutional claims. This interest is best and most consistently served not by carving out certain exceptions to the rule, but by recognizing the discretion afforded to appellate courts by the text of the rule to decline to remedy errors not resulting in a miscarriage of justice.

*See Olano*, 507 U.S. at 731, 736, 113 S.Ct. 1770; *Young*, 470 U.S. at 15–16, 105 S.Ct. 1038.

**5.** Although, the same is true for many claims based on the Colorado Constitution, our appellate courts appear to have carved out a categorical exception for such claims. *See, e.g., Martinez*, 244 P.3d at 139; *People v. Oynes*, 920 P.2d 880, 883 (Colo.App.1996).

**6.** It is possible to regard such claims as a species of waived claims. *See United States v. Robinson*, 503 F.2d 208, 214 (7th Cir.1974).

Third, and more broadly, claims of error that are waived, as opposed to merely forfeited, should not be reviewable for plain error. *See Olano,* 507 U.S. at 733, 113 S.Ct. 1770. If a defendant in a criminal case waives an error in the trial court—i.e., intentionally relinquishes or abandons a known right—he waives any right to plain error review on appeal. *Id.* at 733–34, 113 S.Ct. 1770; *see, e.g., United States v. Teague,* 443 F.3d 1310, 1314–17 (10th Cir.2006); *McMurtry,* 122 P.3d at 240–42 (guilty plea waives nonjurisdictional claims of error); *People v. Rodriguez,* 209 P.3d 1151, 1160 (Colo.App.2008), *aff'd,* 238 P.3d 1283 (Colo.2010); *People v. Lopez,* 129 P.3d 1061, 1065 (Colo.App.2005); *People v. Salyer,* 80 P.3d 831, 835 (Colo.App. 2003) (particular argument on appeal that the district court erred in denying motion to suppress was waived where the defendant did not raise that argument in the district court).[7]

Fourth, unpreserved claims that a defendant raises—in the sense of identifying an alleged error—but does not adequately argue should not be reviewable. *See, e.g., United States v. Charles,* 469 F.3d 402, 407–08 (5th Cir.2006); *People v. Simpson,* 93 P.3d 551, 555 (Colo.App.2003). This would include claims for which the defendant provides no supporting authority or record citations as required by the rules of appellate procedure.

C. Adopt the Federal Four–Part Test

Assuming that an unpreserved claim of error does not require further development of a factual record, has not been waived, and has been adequately presented on appeal, I would consider the claim, of whatever ilk, under Crim. P. 52(b). Were I writing on a clean slate, I would apply the four-part test applied by the federal courts.

As noted, Crim. P. 52(b) is identical to Fed.R.Crim.P. 52(b). Because the rules are identical, and because the supreme court adopted Crim. P. 52(b) in 1961, seventeen years after Congress adopted Fed.R.Crim.P.

52(b), it seems clear that the Colorado rule was patterned after the federal rule.[8] Therefore, case law interpreting Fed. R.Crim.P. 52(b) is persuasive in applying the Colorado counterpart. *See Harding Glass Co., Inc. v. Jones,* 640 P.2d 1123, 1125 n. 3 (Colo.1982) (applying this principle to rules of civil procedure); *People v. Gallegos,* 226 P.3d 1112, 1117–18 (Colo.App.2009) (applying this principle to rules of criminal procedure); *People v. Medina,* 72 P.3d 405, 410 (Colo. App.2003) (applying this principle to rules of evidence). Neither *Miller* nor any other Colorado Supreme Court decision explains why we should apply Crim. P. 52(b) differently from how the federal courts apply Fed. R.Crim.P. 52(b).

Further, adopting the fourth part of the federal plain error test would be consistent with the text of Crim. P. 52(b) and would allow Colorado courts to limit findings of plain error to those cases in which failing to remedy the error would sanction a miscarriage of justice. Under current practice, we laboriously analyze whether unpreserved claims of nonconstitutional error satisfy the three-part test. Oddly, we review every such claim (if not waived). As a result, a defendant has a better chance of obtaining reversal based on an unpreserved nonconstitutional error than he does if the unpreserved error is a violation of his constitutional rights, a result that arguably turns on its head the concept of "substantial" error in Crim. P. 52(b). Adopting the fourth prong of the plain error test would allow us to efficiently weed out claimed errors—constitutional or otherwise—that clearly do not seriously affect the fairness, integrity, or public reputation of judicial proceedings without addressing the first three prongs of the test. Doing so would further encourage defendants to raise purported errors in the trial court.

I have not exhaustively surveyed the law in all fifty states. I note, however, that a

---

7. Invited error is akin to waived error. *See, e.g., United States v. Hardwell,* 80 F.3d 1471, 1487 (10th Cir.1996), *reh'g granted and rev'd,* 88 F.3d 897 (10th Cir.1996); *People v. Zapata,* 779 P.2d 1307, 1308–09 (Colo.1989). Invited error obviously should not be reviewable for plain error.

8. Crim. P. 52(b) has remained unchanged since the supreme court adopted it in 1961.

number of states' courts apply the *Olano* four-prong test. *See, e.g., Rogers v. State,* 247 Ga.App. 219, 543 S.E.2d 81, 88 (2000); *People v. Carines,* 460 Mich. 750, 597 N.W.2d 130, 137–39 (1999); *State v. MacInnes,* 151 N.H. 732, 867 A.2d 435, 439–40 (2005); *State v. Barnes,* 94 Ohio St.3d 21, 759 N.E.2d 1240, 1247 (2002); *Dysthe v. State,* 63 P.3d 875, 884 (Wyo.2003). Though I would prefer that Colorado follow suit, I recognize that, under the current state of the law in Colorado, I do not have the authority to apply the fourth prong articulated in *Olano* to an unpreserved claim of error. Whether that prong should be applied in plain error review under Crim. P. 52(b) is for the Colorado Supreme Court to decide. *See People v. Gladney,* 250 P.3d 762, 768 n. 3 (Colo.App.2010) (Court of Appeals must follow Colorado Supreme Court precedent).

### V. Application to this Case

I began this concurrence by saying that I do not believe the supreme court has clearly held that an unpreserved claim of constitutional error may not be reviewed for plain error (at least where the claim is not one challenging the constitutionality of a statute). *Miller* appears to hold that such claims should be reviewed for plain error. Thus, I would address defendant's due process challenge to the prosecution's failure to notify him before trial that Ms. Smith would testify as an expert.

Defendant has not cited any case for the proposition that due process requires advance notice of any witness the prosecution intends to call as an expert, and I have found none.[9] Rather, the determination whether failure to notify a defendant of a witness or the witness's proposed testimony before trial violates due process appears to turn on a case-by-case inquiry into whether the defendant was prejudiced by any lack of notice. *See, e.g., United States v. Williams,* 576 F.3d 385, 388–91 (7th Cir.2009); *United States v. Ashley,* 274 Fed.Appx. 693, 697 (10th Cir. 2008) (unpublished decision) ("the Due Process Clause does not require the government

to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information"; citing *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)); *United States v. Johnson,* 228 F.3d 920, 924–25 (8th Cir.2000) (expert witness); *United States v. Ortega,* 150 F.3d 937, 943–44 (8th Cir.1998) (expert witness).

As the majority notes, defendant did not request a continuance, which belies any claim of prejudice. Further, defendant merely speculates that the verdict would have been different if the prosecution had disclosed the substance of Ms. Smith's testimony before trial. He points to nothing showing that he could have attacked her credibility, for example, and the record shows that his counsel was able to cross-examine her thoroughly. During that cross-examination, Ms. Smith admitted that she had interviewed children who had either lied about sexual abuse or misunderstood what had occurred.

Therefore, I perceive no due process violation. Hence, there was no error, plain or otherwise.

---

9. Defendant does not contend that the prosecution failed to timely disclose any exculpatory information as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).