23CA1759 Peo v Vandervelde 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1759
Mesa County District Court No. 22CR673
Honorable Jeremy L. Chaffin, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Richard Alan Vandervelde,

Defendant-Appellant.

---

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

Philip J. Weiser, Attorney General, Megan C. Rasband, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Richard Alan Vandervelde, appeals the district court's order imposing costs of prosecution for DNA testing of a carpet pad. He contends that the court lacked statutory authority to order him to pay for that DNA testing and that the court should have considered his ability to pay those costs. We agree with his first contention and therefore vacate the order and remand for further proceedings.

## I.    Background

¶ 2    In 2018, Vandervelde's mother, Sylvia Frens, went missing. During the investigation, the police found a stain on the carpet of a bedroom closet in Frens's house. The Colorado Bureau of Investigation (CBI) tested the carpet stain for DNA and determined that it was "46 times more likely" that the DNA originated from Frens and an unknown male than from two unknown people. The CBI also identified blood in the carpet padding, but it was too degraded for the CBI to identify a complete DNA profile, so the police sent it to a private lab in Texas for further testing.

¶ 3    It was later discovered that Vandervelde was driving Frens's car across the country, had taken thousands of dollars from her bank account, and had pawned her computer.

1

¶ 4    Approximately four years after the homicide, the new owners of Frens's house discovered her decapitated body on the property. It was determined that she died from blunt force head trauma and possibly strangulation.

¶ 5    In May 2022, Vandervelde was arrested and charged with first degree murder, theft from an at-risk victim, identity theft, theft, aggravated motor vehicle theft, and abuse of a corpse. In May 2023, he pleaded guilty to second degree murder, theft from an at-risk victim, and abuse of a corpse, and stipulated to a thirty-two-year prison sentence. As part of the plea agreement, Vandervelde agreed to pay restitution and costs of prosecution.

¶ 6    At the sentencing hearing that same month, the district court imposed $1,494.26 in restitution and $4,790.05 in costs of prosecution. The prosecution requested that restitution remain open because it had not yet received a bill from the lab to which the carpet padding had been sent for testing. Defense counsel did not object but asked for the opportunity to respond to any additional restitution request. The court granted the prosecution a thirty-day extension.

¶ 7     In June 2023, the prosecution requested additional restitution payable to the police department for $3,597 incurred for DNA lab testing.  The prosecution did not include an invoice or information stating when the lab was paid.  Defense counsel objected, and the district court set the matter for a hearing.

¶ 8     At the hearing in August 2023, which we describe in more detail in part II.B below, a police detective on the case was the sole witness.  After that testimony, the prosecutor clarified that she was seeking the DNA testing costs as a cost of prosecution, not restitution.  The district court granted the prosecution's request for $3,597 in additional costs of prosecution and denied Vandervelde's request that the court consider his ability to pay those costs.

## II.    Discussion

¶ 9     Vandervelde contends that the district court erred by (1) assessing the $3,597 in DNA testing expenses as a cost of prosecution without statutory authority and (2) denying his request to consider his ability to pay those costs.  Because we agree with first contention, we do not address the second.

3

## A. Standard of Review and Applicable Law

¶ 10    "District courts have discretion whether, and in what amount, to assess costs of prosecution . . . ; nonetheless, whether the court has the statutory authority to assess particular costs as costs of prosecution is an issue of statutory interpretation" that we review de novo. *People v. Sinovcic*, 2013 COA 38, ¶ 9.

¶ 11    Under section 18-1.3-701(1)(a), C.R.S. 2024, "[w]hen any person . . . is convicted of an offense, the court shall give judgment in favor of the state of Colorado, the appropriate prosecuting attorney, or the appropriate law enforcement agency and against the offender for the amount of the costs of prosecution . . . ." As relevant here, allowable costs include "actual costs paid to any expert witness." § 18-1.3-701(2)(d.5). The costs of prosecution statute also includes a "catch-all provision" which permits the prosecution to recover "any other reasonable and necessary costs incurred by the prosecuting attorney or law enforcement agency that are directly the result of the successful prosecution of the defendant." § 18-1.3-701(2)(j.5); *see Sinovcic*, ¶ 16 (referring to section 18-1.3-701(2)(j), the former location of subsection 18-1.3-701(2)(j.5), as a "catch-all provision").

¶ 12    "Costs of prosecution" under the statute "refers to the costs of a formal criminal proceeding." *Sinovcic*, ¶ 15. "[T]he specifically enumerated prosecution costs listed in section 18–1.3–701(2) are litigation-related costs that are either expressly or impliedly incurred after formal legal charges have been filed against a defendant." *Id.* at ¶ 16.

## B.    Additional Facts

¶ 13    At the hearing, the detective testified that the CBI had been unable to get a complete DNA profile from the carpet padding, so the detective solicited a quote from the Texas lab, which was "extensively involved in identifying human remains and DNA testing." He also testified that the CBI could have done additional DNA testing itself but that it would have been consumptive.[1] He further explained that, because it was unclear if Frens's body would ever be found, additional DNA testing was necessary to "shore up the evidence" found in the closet.

¶ 14    The detective went on to describe his communications with the lab. He said the lab "felt that . . . [it] would be able to get a

---

[1] A consumptive test is one which prevents future independent testing of the object being examined. *See* 16-3-309(1), C.R.S. 2024.

complete DNA profile" from consumptive testing on the carpet padding. The detective received an initial quote from the lab for the DNA testing after a phone conference. Although not sure of the exact date, the detective said the carpet padding was sent to the lab before Frens's body was found in April 2022. The police did not ask the lab to cease testing after Frens's body was found.

¶ 15 At the time of the hearing, the detective did not know when the lab actually did the DNA testing and had not yet received the test results. However, the invoice from the lab, which was dated April 2023, was admitted as an exhibit at the hearing.

¶ 16 After the testimony, the prosecutor argued that the DNA testing by the Texas lab was important because "if [Vandervelde] was in that house with human remains in that closet, that would presumably be something a jury would like to hear about." She also said the prosecution had not endorsed a witness from the lab for trial because they had not yet received the test results.

¶ 17 The defense argued that the DNA testing cost was not reasonable and necessary under the costs of prosecution statute because (1) the prosecution already had DNA results from the carpet itself, which indicated that it was forty-six times more likely

that the DNA belonged to Frens; (2) the CBI could have done additional testing, including the disputed testing done by the lab; and (3) the lab did not do the testing until after the case had been resolved.

¶ 18     The defense also argued that the DNA testing cost was not a cost paid to any expert witness under the costs of prosecution statute because the prosecution had not endorsed a representative from the lab as a witness.  Finally, defense counsel requested that the court determine whether Vandervelde could pay the costs because "costs in criminal cases must be paid by the State if the Court determines that the defendant is unable to pay them."

¶ 19     At the close of the hearing, the district court granted the prosecution's motion for the additional $3,597 in costs of prosecution based on the DNA testing by the lab.  The court found that the DNA testing expense was an actual cost paid to an expert witness and that the cost was "incurred subsequent to the initiation of the prosecution in this case."  The court made an alternate finding that, if it had considered the expense under the "catch-all" provision of the costs of prosecution statute, it would have found the expense unnecessary.  The court also denied Vandervelde's

request to determine whether he could afford to pay the costs, finding that the statute directing the court to consider a defendant's ability to pay only applied to court costs, not prosecution costs.

### C. The DNA Testing Expense Was Not a Cost Paid to an Expert Witness

¶ 20 Vandervelde argues that the district court erred when it determined that the expense was properly assessed as an "actual cost[] paid to any expert witness" under section 18-1.3-701(2)(d.5). We agree.

¶ 21 An expert witness is a person who is "qualified as an expert by knowledge, skill, experience, training, or education" to testify as to "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." CRE 702. Here, the prosecutor testified at the hearing that the prosecution never endorsed a representative from the lab as a witness because it had not received the results of the test before Vandervelde pleaded guilty, although it "would've" endorsed a representative from the lab as a witness knowing "what we know now." The prosecution did not present any evidence at the hearing regarding consultations with the lab about preparing an

expert report or testifying at trial. *See* Crim. P. 16(I)(a)(1)(III), (I)(b)(3) (if a witness that the prosecution intends to call at trial is an expert and has issued a report or statement made in connection with the particular case, the prosecution must provide the pertinent reports and statements before trial); *see also People v. Greer*, 262 P.3d 920, 930 (Colo. App. 2011) ("[I]f a witness that the prosecution intends to call at trial is an expert, the prosecution must provide pertinent reports and statements . . . before trial."). Moreover, as Vandervelde points out, "[t]he bill was solely for testing of evidence — not for travel costs for an expert, not for consulting fees paid to an expert, [and] not for testimony of an expert."

¶ 22    Therefore, the district court erred by finding that the DNA testing expense qualified as a cost paid to an expert witness.

### D.    The DNA Testing Expense Was Not a Reasonable and Necessary Cost Under the "Catch-All" Provision

¶ 23    As stated, the "catch-all" provision under section 18-1.3-701(2)(j.5) permits costs of prosecution for "any other reasonable and necessary costs incurred by the prosecuting attorney or law enforcement agency that are directly the result of the successful prosecution of the defendant."

9

¶ 24    In granting the prosecution's motion for costs, the district court made "an alternate finding to clarify if the Court had considered [the DNA testing expense] under (j.5), the Court would've found that these were unnecessary costs for the prosecution." The court reasoned that the testing was unnecessary because there were alternate means to obtain results through the CBI, a "State funded entity."

¶ 25    On appeal, Vandervelde argues that the only category of costs that could include the DNA testing expense is the "catch-all" provision but that the expense still did not qualify under this provision because it was not "reasonable and necessary." And as the People concede, "[t]he [district] court agreed with defense counsel's argument in this regard, the People did not cross-appeal, and the People do not advance this argument on appeal."

¶ 26    Because there is no dispute regarding the district court's finding, we will not disturb the court's finding that the DNA testing expense was unnecessary.

¶ 27    Because it was neither an expert witness cost nor a reasonable and necessary expense under the "catch-all" provision, we conclude

that the district court erred by imposing the DNA testing expense as a cost of prosecution.

¶ 28 Consequently, we need not address Vandervelde's contentions that (1) the DNA testing expense was not a cost of prosecution because it was incurred before he was charged, and (2) regardless of the category, a proper interpretation of the costs of prosecution statute demonstrates that all costs of prosecution must be reasonable and necessary.

## III. Disposition

¶ 29 The order imposing costs of prosecution for the DNA testing of the carpet pad is vacated, and the case is remanded to the district court to reduce the total assessed costs of prosecution by $3,597.

JUDGE TOW and JUDGE PAWAR concur.